## Zinn and Cheney *v.* State.

## Opinion delivered July 8, 1918.

1. CRIMINAL LAW—EVIDENCE—PHOTOGRAPHS OF SCENE OF CRIME.—Where, in a prosecution for rape, the acts of intercourse are admitted, and there is no controversy about the place, it was not error to admit photographs of the *locus in quo* which correctly reproduce the scene of the alleged crime, and which may have had some probative value on the question of consent.

2. RAPE—INSTRUCTION.—An abstract instruction that "proof of actual penetration into the body shall be sufficient to sustain an indictment for rape" was not prejudicial upon the ground that there was no controversy about penetration, and that the jury would likely infer that if there was penetration the offense charged had been committed where other instructions dealt with the question of force and lack of consent and told the jury that no crime was committed if the act of intercourse was had with the consent of the prosecuting witness.

3. RAPE—INSTRUCTIONS.—An instruction in a rape case that if the jury find from all the evidence beyond a reasonable doubt that the defendants "raped" the prosecuting witness, they should find the defendants guilty, and assess their punishment accordingly, was not prejudicial as being too general where other instructions declared the whole law of the case.

4. CRIMINAL LAW—INSTRUCTIONS.—An instruction in a prosecution for rape which told the jury "if, after hearing all the evidence in the case, you are convinced beyond a reasonable doubt that the defendants committed the crime as charged in the indictment, you will find them guilty," was not objectionable as permitting the jury to take into account in arriving at their verdict anything except the evidence heard at the trial.

5. RAPE—DUTY OF PROSECUTRIX TO RESIST—INSTRUCTION.—In a prosecution for rape an instruction requested by defendants that it was the duty of the prosecutrix to give alarm and make an outcry "when she first learned of defendants' design to have sexual intercourse with her" was properly modified by adding after the words "design to" the words "forcibly and against her will."

6. RAPE—DUTY OF PROSECUTRIX TO RESIST—INSTRUCTIONS.—Instructions asked by the defendant in a rape case that the resistance of the prosecutrix must be carried to the uttermost were properly modified by substituting the requirement that she use all the means within her power for that purpose, consistent with her safety.

7.  CRIMINAL LAW—TRIAL—APPLAUSE OF BYSTANDERS.—Where a large crowd attended the trial of a rape case and applauded the prosecuting attorney during his closing speech, whereupon, on objection by defendants, the court reprimanded the audience, and cautioned the jury not to allow it to influence them in their verdict, and there was no further recurrence of the applause, it will be presumed that the admonition cured any prejudicial effect therefrom.

8.  SAME—MISCONDUCT OF JURORS.—The fact that, during the trial of a prosecution for rape, members of the jury held conversations with outsiders will not be ground for new trial where officers accompanied these jurors and it was shown that the conversations were casual and not related to the trial.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; affirmed.

*J. S. Abercrombie* and *Mehaffy, Reid, Donham & Mehaffy,* for appellants.

1.  It was error to give the State's instruction No. 2 that proof of actual penetration, etc., was sufficient. There was no issue as to penetration and it is misleading. The penetration was admitted.  Other elements are also necessary.   33 Cyc. 1504; 11 S. W. 106; 3 *Id.* 784.

2.  The State's instruction No. 8 is too general. The elements of rape should have been mentioned.

3.  No. 9 as to reasonable doubt was error.  It permits the jury to consider other matters than the evidence.   81 Ark. 16.

4.  The court erred in modifying No. 3 for defendant by adding forcibly and against her will. 110 Ark. 152.

5.  The court erred in giving No. 6 for defendant by eliminating the words that "opposition by mere words is not sufficient."  There was testimony that there was no resistance at all and the prosecutrix was not hurt or injured.

6.  It was error to refuse No. 7 for defendant, as to resistance, outcry, etc.   92 Ark. 71.

7.  The photographs were not admissible in evidence.   91 Ark. 175.

8.  It was prejudicial error to fail to reprimand the audience when it cheered and applauded the closing ar-

gument of the prosecuting attorney. 104 Ark. 162. Doubtless the jury were also unduly influenced by the presence and disposition of the large crowd.

9. The jury was talked to by outsiders; were permitted to separate and pass among the crowd and talk to guests of the hotel. They were also threatened and mob spirit was manifest. All these had undue influence.

10. The evidence was not sufficient to support the verdict. There was no resistance and she was unbruised and unhurt. 110 Ark. 152.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. No error in giving instruction No. 2. It follows the statute. Kirby's Digest, § 2006. All the elements of rape were set out in other instructions given. *Ib.* § § 2345, 4506-8; 59 Ark. 422; 58 *Id.* 353; 85 *Id.* 179; 80 *Id.* 360; 82 *Id.* 64; 91 *Id.* 582; 123 *Id.* 583; 109 *Id.* 378; 110 *Id.* 402.

2. No error in giving No. 8. It is not too general. All the necessary elements of rape were repeated in other instructions. 110 Ark. 402; cases *supra.*

3. No error in the 9th for the State. 109 Ark. 378.

4. The court did not err in modifying No. 3 for defendants. 92 Ark. 71.

5. There was no error in modifying No. 6 for defense. 63 Ark. 470; 66 *Id.* 523; 52 S. C. 488. The whole instruction might well have been refused. Proper instructions were also given otherwise.

6. No error in refusing No. 7. It singles out particular facts and directs the attention of the jury to them. 95 Ark. 48; 103 *Id.* 21; 109 *Id.* 391; 114 *Id.* 398; 172 S. W. 1025; 100 Ark. 330; 37 *Id.* 333; *Ib.* 215.

7. No error in refusing No. 12 The photographs were admissible in evidence. 93 Ark. 313; 112 *Id.* 236; 80 *Id.* 528.

8. No prejudicial error in admitting the testimony of prosecutrix that she thought defendants were going to drown her. On objection the court included the testi-

mony as to what she thought. Nor was there error in admitting testimony as to the height of the bank and depth of water. It is merely descriptive of the surroundings. Nor was it error to permit witness to describe the places where the assaults were made. It was competent. 130 Ark. 471; 90 *Id*. 435.

9. There was no reversible error in connection with the cheering and applause. The audience was duly reprimanded. The admonition was sufficient and cured any possible error. 104 Ark. 162.

10. No error in permitting the crowd to assemble nor in the conduct of the jury nor others toward the jury. The evidence of the jurors was not competent and no prejudice is shown. 130 Ark. 48; 109 *Id*. 193; 126 *Id*. 562; 127 *Id*. 254; 101 *Id*. 51; 35 *Id*. 118; 95 *Id*. 428; 102 *Id*. 356.

1. The evidence amply sustains the verdict.

SMITH, J. Appellants seek by this appeal to reverse a judgment in the court below imposing a life sentence in the penitentiary upon a conviction of the crime of rape. The crime was alleged to have been committed upon Mrs. Olive Brummett, and, according to her testimony, the crime was one of revolting bestiality.

Appellants admit the act of intercourse but say that Mrs. Brummett fully consented and that she thereby compensated them for services in attempting to carry her from the city of Benton to the hamlet of Grape, in Saline County. Mrs. Brummett and her husband were moving back to this State, after having lived for a time in Oklahoma, and they were making the trip in a wagon when one of the mules died, and they were unable to proceed further with the wagon, and Mr. Brummett remained with the wagon and sent his wife on to Grape to see his brother-in-law, who lived there, about getting another mule or horse with which to proceed on his journey. Mr. Brummett had told his wife that an acquaintance of his named Will Dodson lived at Grape and came frequently to Benton, and that upon her arrival at that

place to inquire for Dodson, who would carry her to her destination. Upon her arrival at Benton she inquired for Dodson, but he was not in the city, and she was told that he would not be in town until three or four o'clock in the afternoon. She did not know Dodson and was anxious to be on her way, so she inquired of others about getting to Grape, but could find no one to take her there until she met appellant Cheney, who offered to perform that service. She left in a buggy with Cheney and Zinn, who commenced drinking shortly after leaving town. They invited her to drink but she declined. They commenced taking liberties with her person, which she repelled. Finally they drove to a point where the road lost its identity in the woods and appellants stated that they had lost the road to Grape and didn't know how to proceed further. They then announced their intention to have sexual intercourse with Mrs. Brummett when she struck the horse with the whip and ran the buggy into a tree. She struck Cheney with the whip and made such resistance as she could by screaming, but no one heard or answered her call for help. She was taken from the buggy and ravished by first Cheney and then by Zinn. She says that in resisting Cheney she bit one of his fingers, but appellants smothered her cries by placing their hands over her mouth. She finally ceased to resist because she thought they were going to drown her in the river, and Cheney had intercourse with her for the third time. Appellants finally drank all their whiskey, but before doing so Cheney proposed to Zinn to drench Mrs. Brummett with some of it if she would not drink voluntarily, but Zinn refused to assist and this was not done. Mrs. Brummett made her escape and ran down the road to the home of a Mr. Starnes, but in doing so she had to leave her suitcase in the woods. Mrs. Starnes testified that Mrs. Brummett arrived at her house late in the afternoon. She was walking. Her clothing was wet and her hair full of sticks. She was excited and had been crying. Cheney followed Mrs. Brummett, and when he arrived he went into an outhouse, where he remained for

about thirty minutes and then departed. Shortly after
his departure Mr. Starnes returned home, and Mr. and
Mrs. Starnes accompanied Mrs. Brummett in her search
for her suitcase, which was found on the bank of the
river. A photograph was offered in evidence showing
the place where the grip was found; and other photo-
graphs were also offered in evidence showing the scene
of the alleged offense. The accuracy of the photographs
was established, but they were offered in evidence over
appellants' objections.

Appellants testified that they had an understanding
with Mrs. Brummett before they left Benton, and that
they were only prevented from having intercourse with
her in the courthouse, where they went for that purpose,
by finding the room locked which they had intended to
use. They left town together, and unrestrained liberties
were taken with Mrs. Brummett's person as they drove
along until finally they realized they had lost their road.
They then stopped and selected the most suitable place
for the acts of sexual intercourse in which they then in-
dulged.

Cheney accounted for his lacerated finger by stating
that he and Zinn disagreed over the road to take to Grape
and in the fight which followed Zinn bit his finger.

Over appellants' objection the court gave an instruc-
tion reading as follows: "2. You are instructed that
proof of actual penetration into the body shall be suffi-
cient to sustain an indictment for rape."

This instruction was objected to specifically upon
the ground that there was no controversy about penetra-
tion and the jury would likely infer that if there was pen-
etration the offense charged had been committed.

An instruction numbered 8 reads as follows:

"You are instructed that in determining the guilt or
innocence of the defendants, you will take into considera-
tion all the facts and circumstances as testified to by the
witnesses in the case, and if from all the evidence in the
case you find beyond a reasonable doubt that the defend-

ants raped the said Mrs. Olive Brummett, it will be your duty and you are instructed to find them guilty and assess their punishment at death in the electric chair or imprisonment for life.''

This instruction was objected to on the ground that it was too general and might permit the jury to lose sight of the elements necessary to constitute the crime of rape.

Instruction numbered 9 reads as follows:

''You are instructed that a reasonable doubt is not an imaginary, captious or fictitious doubt, but it is such a doubt as a reasonable and prudent person would have after hearing all the evidence in the case; and if, after hearing all the evidence in the case, you are convinced beyond a reasonable doubt that the defendants committed the crime as charged in the indictment, you will find them guilty.''

A general objection was made to this instruction, and it is now insisted that it permits the jury to take into consideration other matters than the evidence in the case in arriving at their conviction of guilt.

An instruction numbered 3 was requested by appellants which told the jury that it was Mrs. Brummett's duty to give an alarm and make an outcry ''when she first learned of defendants' design to have sexual intercourse with her.'' The court modified this instruction by adding after the word ''design'' the phrase ''to forcibly and against her will.''

Other instructions were asked which told the jury that it would be essential to find that Mrs. Brummett resisted and that such resistance was carried to the uttermost. These instructions were given after having been amended by striking out the requirement that the resistance must be carried to the uttermost and inserting the phrase that she must have used all the means within her power.

During the closing argument of the prosecuting attorney the audience cheered him. This incident occurred just before the closing of his argument. And the attor-

ney was not then reprimanded. He proceeded with his argument, when the audience applauded a second time, when counsel for appellants requested the court to reprimand the audience for their applause. Thereupon the court said: ''There has been a big crowd present all during this trial, and I have requested the audience each time we assembled, to keep very quiet, and the audience has been extremely quiet and courteous, and we have gotten along mighty nicely, except this cheering, I have noticed that such occurs in other places sometimes. It is improper, and I hope that it won't occur again, it must not occur again because such conduct might prove fatal under certain conditions. Gentlemen of the jury, this cheering was improper and should not have taken place. You will not consider it or allow it in any way to influence you in your verdict. The only thing you should consider is the evidence and the law.''

The trial consumed several days, and it is insisted that during that time the jury was subjected to improper influences, and a new trial was asked on that account.

And it is finally insisted that the evidence is insufficient to support the verdict.

We will discuss these assignments of error in the order stated.

It is very earnestly argued that the second instruction should not have been given for the reason stated. It must be conceded that the instruction was abstract and should not have been given; but it is inconceivable that it could have been prejudicial. The jury could not have understood that proof of penetration alone was sufficient to constitute the crime of rape when the large number of other instructions dealt with the question of force and lack of consent and told the jury in the most unmistakable terms that no crime was committed if the act of intercourse was had with Mrs. Brummett's permission. There were twenty other instructions in the case, and these would all have been immaterial if proof of penetration alone was sufficient to constitute the crime, and the jury

could not have understood that all of these other instructions were meaningless, and that the question of force and lack of consent was unimportant provided only there was a penetration. The instruction given was in the language of the statute, and by it the court meant no doubt only to say that proof of penetration was sufficient without proof of emission. And while, as we have said, it should not, under the issues of this case, have been given, we feel certain that no prejudice resulted from having given it.

No prejudicial error was committed in the introduction of the photographs, as the acts of intercourse are admitted, and there is no controversy about the place. Nor is it contended that the photographs do not correctly reproduce the *locus in quo*. They reproduced the scene of the alleged crime and may have had some probative value on the question of consent. The jury might or might not have regarded the place as one which would likely be voluntarily selected for assignation purposes.

Instruction No. 8 might be said to be too general if it stood by itself. But it was one of a number of other instructions, and the court had not attempted in this or in any other instruction to declare the whole law of the case. It was the province of this instruction to declare the punishment fixed by the law, and it was correct in that respect, and it was not otherwise prejudicial.

We do not think instruction No. 9 is open to the objection now made to it. And we think it is not fairly susceptible to the objection that it permits the jury to take into account in arriving at their verdict anything except the evidence heard at the trial. Upon the contrary, its language is that "if after hearing all the evidence in the case you are convinced beyond a reasonable doubt" to return a verdict of guilty. We think it a strained and unwarranted construction of this language to say that it authorizes the jury to consider anything except the testimony in the case.

Appellants complain of the modification of their instruction numbered 3, set out above, and in support of

their contention say that the instruction as asked was copied from the opinion of this court in the case of *Threet* v. *State,* 110 Ark. 159, where it had been approved. An inspection of that case, however, discloses the fact to be that the instruction there set out had been asked by the appellant in that case, according to which the jury would have been told that it was the duty of the woman assaulted "to use all the means within her power" to resist the assault. The court amended the instruction by adding the words "consistent with her safety" and the instruction was given in that case as modified. We there said that no error was committed in the modification made. We were not called upon to decide whether the instruction as given was a correct declaration of the law to be given in any case in which it might be asked. So we now say that the modification which the court here made to the instruction which was there given was not improper but was a modification which should have been made. The effect of the modification in the case now before us was to relieve Mrs. Brummett of the duty to give alarm and make outcry until she first learned of appellants' design "to forcibly and against her will" have sexual intercourse with her. In other words, under the instruction as modified, she was not required to give this alarm or make this outcry until she realized that appellants intended to have intercourse with her, without regard to her consent.

Other instructions were correctly modified by striking out the requirement that Mrs. Brummett's resistance must be carried to the uttermost and the substitution for that requirement that she use all the means within her power for that purpose. The law does not require of the woman, who seeks to protect her chastity, that she shall resist as long as either strength endures, or consciousness continues. It is essential that she shall not at any time consent, but none of the cases on the subject hold that she has consented because, through fear for her life or bodily safety, she has ceased to resist or fails to make an outcry. And in this connection we

copy the instruction which as modified was given by the court, and we dispose of appellants' contention in this respect by saying that they had no right to ask a more favorable declaration of the law than that given by the court:

"5. You are instructed that a mere pretense at resistance by the prosecutrix is not sufficient, but that resistance on her part must be in good faith, and she must use all the means within her power, consistent with her safety, and unless you find from the evidence, beyond a reasonable doubt, that the prosecutrix used all the means within her power, consistent with her safety, up to the time when the act of sexual intercourse was actually accomplished, it will be your duty to find the defendants not guilty."

We do not know what the remarks of the prosecuting attorney were which occasioned the applause on the part of the audience. The first applause may have been in response to some thought or sentiment expressed by the prosecuting attorney, to which no one could object except that it was, of course, improper to have any applause at any time to any part of the trial. This first applause, however, was evidently not regarded by learned counsel for appellants as significant or prejudicial, because no objection was made to it. Objection was made, however, when the applause was repeated, and the court admonished the audience that it must not occur again. It is insisted that the reprimand given was apologetic in its terms and that it should have been firmer and more emphatic. It appears, however, to have been sufficient for the purpose intended, as there was no further recurrence of the applause, and the jury was expressly told not to consider it or to allow it in any way to influence the verdict, and that the only thing which they could consider was the evidence and the law. We conclude, therefore, that the admonition given was sufficient to cure any prejudicial effect resulting from the misconduct on the part of the audience.

It is shown that one or more members of the jury spoke to persons who were not members of the jury. But there was an affirmative showing that these conversations had no relation to, or connection with, appellants' trial. It is affirmatively shown that an honest attempt was made to preserve the integrity of the trial by keeping the jury together and that this was done as nearly as possible under all the circumstances. A large crowd of people attended the trial and crowded the courthouse and the hotel where the jurors slept and took their meals. An officer remained in constant attendance upon the jury, and while it was not possible at all times to prevent casual conversations which were shown to have occurred when some of the jurors left their fellows to go to the toilet, yet officers of the court accompanied these jurors, and it was shown that the conversations had were casual and in no way related to the trial.

What we have already said disposes of the contention that the evidence is insufficient to support the verdict of the jury. The only question that can arise in that connection is that of the truthfulness of Mrs. Brummett's story, and that was a question exclusively for the jury.

Finding no prejudicial error the judgment is affirmed.