YOUNG *v.* STATE.

Opinion delivered May 17, 1920.

1. WITNESSES—IMPEACHMENT AS TO COLLATERAL MATTER.—Where, in a prosecution for carnal abuse of a girl under age of consent, the State asked the prosecutrix in effect whether she had had intercourse with a man other than defendant by inquiring whether the first act of intercourse with defendant pained her, it was reversible error to exclude testimony offered by defendant which would have warranted the inference that she had had intercourse with another man,

2. CRIMINAL LAW—PHOTOGRAPHS AS EVIDENCE.—Photographs, when properly authenticated, are often competent to give the jury a view of objects which could not otherwise be brought to their attention.

3. CRIMINAL LAW—PHOTOGRAPH AS EVIDENCE.—In a prosecution for carnal abuse where the age of the prosecutrix was an issue, a photograph taken several years before the trial was properly excluded since the jury had an opportunity to determine her age while she was on the witness stand.

4. CRIMINAL LAW — INSTRUCTION — REASONABLE DOUBT.—Where the court charged that in order to convict the jury must believe beyond a reasonable doubt that defendant is guilty, it was

not error to refuse to charge that "a reasonable doubt of defendant's guilt is not the same as the probability of his innocence, but may exist where the evidence fails to convince the jury that there is a probability of defendant's innocence."

Appeal from Desha Circuit Court; *W. B. Sorrells,* Judge; reversed.

*E. L. McHaney, X. O. Pindall, P. S. Seamans* and *Geo. W. Murphy,* for appellant.

1. The court erred in refusing to permit the defendant to introduce in evidence on cross-examination of the prosecutrix the photograph of the prosecutrix and when it was taken. The photograph was admissible in evidence to prove the age of the prosecutrix. 135 Ark. 350.

2. The record of the charge preferred in the magistrate's court was admissible in evidence. Defendant should have been allowed to ask Mrs. White and show by her cross-examination that others than the defendant had been seen with and in the presence of the prosecutrix.

3. Rainwater should have been allowed to testify. His testimony was competent. 125 Ark. 272; *Ib.* 339; *Howell* v. *State,* 141 Ark. 487.

4. The court erred in refusing the instruction as to reasonable doubt. 10 So. Rep. 517; 106 Ala. 35; 150 *Id.* 24; 117 *Id.* 139; 120 *Id.* 365; 133 *Id.* 108; 175 *Id.* 11; 8 Ala. App. 42.

5. There was prejudicial error in the closing argument of the State's attorney, as there was no evidence justifying his statements to the jury. 132 Ark. 531.

*John D. Arbuckle,* Attorney General, and *J. B. Webster,* Assistant, for appellee.

1. There was no error in refusing to admit the photograph in evidence taken a year or so prior to the trial. The age of the prosecutrix was fully shown by testimony and the photograph was clearly inadmissible and was properly excluded. 160 Mass. 403; 122 N. Y. S. 14; 135 Ark. 350.

2. The record of the justice of the peace's preliminary trial was properly refused to be admitted as evidence. 66 Ark. 545.

3. No error was committed in excluding the testimony of Mrs. White on cross-examination. It was immaterial.

4. Rainwater's testimony was clearly inadmissible. 79 Ark. 594.

5. Appellant did not request a proper instruction on reasonable doubt and he can not now complain. 114 Ark. 49.

6. There was no error prejudicial in the remarks of the State's attorney. 112 Ark. 452; 115 *Id.* 101; 23 *Id.* 32; 293. S. W. 89. No abuse of discretion by the court is shown.

McCulloch, C. J. Appellant stands convicted of the crime of carnal abuse, alleged to have been committed by having sexual intercourse with a girl under the age of sixteen years. According to the testimony, appellant and the prosecuting witness both resided in the town of McGehee, and became acquainted with each other and began to associate together about the latter part of February or the early part of March, 1918. Appellant was a practicing physician—an unmarried man—and the girl in question was, at the time she became acquainted with appellant, working in the office of another physician in the same building where appellant's office was located. Soon after they became acquainted with each other, appellant and the girl were together a great deal and frequently rode together in an automobile, and they visited each other during office hours—either in the office of appellant or in the office of the other physician where the girl worked.

The girl testified at the trial that within two or three weeks after she became acquainted with appellant and they began to associate with each other, he solicited her to have sexual intercourse with him and that she yielded to his embraces—that thereafter they had sexual inter-

course two or three times a week for nearly a year; that she became pregnant during the month of November, 1918, and gave birth to the child in August, 1919. She testified that there was no engagement of marriage between her and appellant. On the contrary, appellant's testimony was to the effect that he was engaged to marry the girl, but never had sexual intercourse with her, and that when he ascertained in February or March, 1919, that the girl had been seen under questionable circumstances with another man and when she admitted her guilty association with the man, he broke off the engagement of marriage.

There is a conflict in the testimony as to the age of the girl, but the verdict of the jury settled the conflict against appellant on that issue.

The State introduced witnesses to prove appellant's frequent association with the girl, which testimony was, of course, intended as corroboration of her testimony that she had had sexual intercourse with him and that he was the father of her child. There was no dispute, however, as to the fact that appellant was with the girl a great deal and frequently took automobile drives with her, and also that he frequently accompanied her on other occasions. Appellant admitted those things and testified that he was engaged to be married to the girl and intended to marry her until he ascertained that she was untrue to him.

After the close of the State's testimony, appellant's counsel called the girl to the witness stand for further cross-examination, and while on the stand the prosecuting attorney asked her the question whether or not the first time she had intercourse with appellant Young it hurt her, and she replied, "It certainly did." Appellant testified that in January or February, 1919, after the girl had returned from a visit to relatives in another town he was driving along one of the streets in McGehee with an acquaintance, a Mr. Rainwater, about 10 o'clock at night, and that he observed this girl walking with another man,

that he drove along slowly to watch them, and that they turned into the stairway of a certain office building and disappeared up the stairway. He testified further that the next day he made an engagement with the girl to take her riding and asked for an explanation of her conduct on the night before, and that the girl broke down and cried and admitted her illicit relations with the other man.

Appellant offered to testify that she gave him the name of a certain man there as the father of her child, but the court excluded that testimony. Appellant also offered to prove by Rainwater that he was driving with appellant on the night in question and saw this girl in company with another man about 10 o'clock at night going up the stairway of the office building mentioned.

It is insisted by counsel for appellant that the court erred in refusing to permit them to prove this alleged conduct of the girl, which was of questionable character, as the jury might have inferred from it that she was resorting to the building in question as an assignation place for the purpose of having sexual intercourse. It is argued that the State, by asking the girl the question about the first act of intercourse with appellant being painful, thus put in issue the question whether or not she had had intercourse with another man. It has been decided by this court that in cases of this kind if the State elects to put in issue the question whether or not the injured girl has had intercourse with a man other than the defendant, then the accused has the right to introduce proof, in contradiction and impeachment of the witness, to show that she had in fact had sexual intercourse with other men. *McArthur* v. *State,* 59 Ark. 435; *Howell* v. *State,* 141 Ark. 487.

The prosecuting attorney did not ask the girl the direct question whether or not she ever had intercourse with another man, but the question propounded with reference to the first act of intercourse with appellant being painful drew out a statement which the jury could only

consider as tending to show that it was her first act of sexual intercourse with any man. We can not understand what other purpose there was in view than to show that the girl was chaste when she began having sexual intercourse with appellant, and it would have tended to break down her testimony if appellant had been allowed to show that she was associating with another man under circumstances which would warrant the inference that she was resorting to an assignation place for the purpose of having sexual intercourse. The effect was the same as if the girl had been asked a direct question whether or not she had ever had sexual intercourse with another man, and appellant was, under the rule announced in the cases herein cited, entitled to contradict her, either by direct testimony or by circumstances, that she had sexual intercourse with other men or another man. Appellant was permitted by the court to testify himself concerning this circumstance about seeing the girl go into the office building at night with another man, and he offered to establish the same fact by Rainwater, another witness, but the court excluded the testimony. Previous to offering this testimony, appellant asked the girl on the witness stand whether or not she had gone into the building and whether or not appellant had, as stated by him on the witness stand, interrogated her on the subject and that she admitted it, to which inquiry she answered in the negative. The conclusion is therefore reached by this court that an error was committed by the trial court in refusing to allow appellant's counsel to go into this subject, and that the error was prejudicial.

There are other assignments of error, some of which, in view of another trial of the case, should be noticed.

Appellant offered in evidence a photograph of the girl taken several years before the trial and the court refused to allow it to be shown to the jury. It is argued by counsel that, in view of the conflict in the testimony as to the age of the girl, the photograph was competent to shed light on that issue, in that the girl might have been

simulating an immature age while on the witness stand, so as to show that her age was under sixteen years, and that the picture taken at a prior date would more clearly show to the jury what her true age was. In other words, it is argued that the girl might have made up for the occasion of testifying before the jury, so as to appear younger than she really was, and that the photograph might show more natural posture and reflect her correct age.

Photographs, when properly authenticated, are often competent evidence in cases, either civil or criminal, for the purpose of giving the jury a view of objects which could not be otherwise accurately brought to the attention of the jury. There are several decisions of this court on that subject. In the case of *Tillman* v. *State,* 112 Ark. 236, we decided that no prejudice resulted from the introduction by the State of a photograph of the murdered girl and the place where her body was found. In the opinion we said that we were unable to see what bearing those photographs could have had upon the case, inasmuch as the scene of the murder had been described by witnesses. In the present case we are unable to see how the introduction of this photograph would have aided the jury in determining the age of the girl. Certainly a photograph would not afford the jury any better opportunity for estimating her age than close observation of her while she was on the witness stand. If there was anything about the appearance of the girl, either at the time of the trial or in the photograph, calculated to disguise her true age, the jury could doubtless discover the disguise more readily from an observation of the girl in person, than by an inspection of the photograph. There was no error, we think, in refusing to allow this photograph to be introduced in evidence.

The court gave no instruction to the jury on the subject of reasonable doubt, except to tell the jury that in order to convict they must believe beyond a reasonable doubt that appellant was guilty. Counsel for appellant

requested the court to give the following instruction, which they insist is a correct definition of reasonable doubt and should have been given: ''A reasonable doubt of defendant's guilt is not the same as the probability of his innocence, but may exist where the evidence fails to convince the jury that there is a probability of defendant's innocence.''

Appellant relies on a line of decisions rendered by the Supreme Court of Alabama, cited on the brief, holding that an instruction on reasonable doubt in this particular form is correct, and that it was error not to give the instruction.   In the case of *Williams* v. *State,* 52 Ala. 411, that court decided that an instruction in this language was improper because it was confusing and calculated to mislead the trial jury.   In subsequent decisions the case of *Williams* v. *State* was overruled.   We think, after careful consideration, that the original decision of the Alabama court was correct.   There is indeed a distinction between the probability of innocence and reasonable doubt of guilt of the accused.   The testimony may leave in the minds of the jury a reasonable doubt, even though not sufficient to show probability of innocence, but the instruction is not a complete definition of reasonable doubt and does not attempt to define the term ''probability of innocence'' in its relation with reasonable doubt, and we think it could only have added confusion in the minds of the jury.   The term ''reasonable doubt'' defines itself and any further attempt to define it, unless done with clearness and accuracy so that a man of average intelligence will understand the definition, is calculated to do more harm than good in giving a jury a clear understanding of the meaning and application of the term.   However appropriate other definitions of reasonable doubt may be, we are convinced that there was no prejudice in refusing this instruction.

It is unnecessary to discuss other assignments of error, but, for the error indicated in refusing to admit the testimony of witness Rainwater, the judgment is reversed and the cause remanded for a new trial.