FORD *v*. MISSOURI PACIFIC RAILROAD COMPANY.

Opinion delivered May 18, 1925.

1. WATERS AND WATERCOURSES—NEGLIGENCE—CONCURRING CAUSES.— Where a railroad's defense to an action for causing an overflow by the construction of a ditch was that the overflow was caused by the act of God, to excuse the railroad, such act of God must be the proximate and sole cause; and where the act of the railroad so mingled with the act of God as to be an efficient and co-operating cause, the railroad would still be liable.

2. WATERS AND WATERCOURSES — ABSTRACT INSTRUCTIONS.—In an action against a railroad company for damages to plaintiff's land caused by the negligent construction of a ditch, in the absence of any evidence that plaintiff had control over the creek into which the ditch emptied, or that it was his duty to dislodge drifts and logs in such creek, *held*, an instruction submitting the issue as to whether plaintiff was negligent in failing to keep drifts and logs out of such creek was erroneous as abstract and as ignoring plaintiff's contention that the railroad's negligence was the proximate cause of the overflow of plaintiff's land.

3. EVIDENCE—PHOTOGRAPHS.—In an action against a railroad for damages from an overflow caused by defendant's negligent construction of a ditch, the admission and photographs of the alleged locality was improper, in the absence of a showing that they were correct representations or reproductions of the locality at the time of the alleged injured.

Appeal from White Circuit Court; *E. D. Robertson,* Judge; reversed.

*Brundidge & Neely,* for appellant.

*Thomas B. Pryor* and *H. L. Ponder,* for appellee.

WOOD, J.   This is an action by G. W. Ford against the Missouri Pacific Railroad Company, in the circuit court of White County, Arkansas.   Ford sought to recover damages by reason of the digging of a ditch by the railroad company along its right-of-way and parallel thereto, in the town of Bald Knob.   Ford alleged that the railroad company negligently and carelessly dug the ditch, so that it diverted the water from Tupelo Creek, a natural watercourse, to run down said ditch over and upon his land, by which he was damaged in the destruction of his crops in the sum of $2,950, for which he asked judgment.

The railroad company answered, setting up that Ford was not entitled to recover for permanent damages to his lands; that the ditch was cut by the company in order to build an embankment to take care of necessary and additional sidetracks and to take care of the surface water which surrounded its property; that the ditches and openings under the company's tracks and road-bed were sufficient to take care of all surface waters and ordinary rainfall, but that, at the time of which Ford complained, there was an unusual and unprecedented rainfall at Bald Knob, which was an act of God, and that the company was not responsible for the damage caused thereby.

Witnesses on behalf of Ford testified to the effect that the railroad company dug a ditch along the east side of its right-of-way north of Bald Knob, which ditch leads off into Tupelo Gum Creek, a well defined natural stream.   After the company dug the ditch, the water would get up in the creek, and that would shove the water back up the ditch and scatter it out over the lowlands.   The land was not subject to overflow until after this water was allowed to come down in this ditch.   There was a divide that kept the water off of Ford's land until the company cut the ditch through it.   There are about fifty-six acres of land that are overflowed by reason of

the digging of the ditch.  Previous to the cutting of the ditch there had been an old ditch there for several years that ran into Gum Creek, but it was not a deep ditch, and not dug by the railroad company.  The company filled up the old ditch in building an extra dump for a track.  The ditch is something like six feet wide.  When the water got as high as 2½ feet in the creek, it began to flow up the ditch.  It overflowed from an ordinary rainfall.  There was testimony on behalf of Ford to the effect that his crop was damaged in March and afterwards on the 2d of May, 1923.

There was testimony for the railroad company to the effect that it dug the new ditch to build a dump for the railroad track, and the dirt taken out of this ditch was off the right-of-way of the railroad company.  They filled up the old ditch, what little there was of it.  Witnesses testified for the company to the effect that the creek would always overflow on both sides before the ditch was dug there, and during the exceedingly heavy rains in May and in June there was an overflow, and the tracks of the company would be covered by the drift.  The rainfall was heavy enough to pick up big cross-ties and wash them down on the track.  The water was about knee-deep at the station.  When this water poured over there by the depot, it was bound to go in over Ford's land.

Ford himself testified that he had two overflows in May and two in June.

The company, over the objection of appellant, introduced photographs that were taken in July, 1923, showing the conditions that existed at that time in the locality of the ditch and the creek.  These photographs were taken without notice to Ford, after this action was instituted, and indicated the appearance of the *locus in quo*.  The witnesses who were in company with the photographer at the time the pictures were taken could only tell what the condition of the creek, ditch and drifts were in March, April and May by the water-marks.  The pictures only represented conditions as they were at the time they were taken.

The plaintiff Ford, in his prayers for instructions· numbered one and six, prayed the court to instruct the jury in effect that, if the damage of which he complained was caused by an act of God concurring with the negligence of the railroad company, they should return a verdict· in his favor. The court instructed the jury, at the request of Ford, to the effect that, if the railroad company so carelessly and negligently constructed the ditch as to divert Tupelo Creek, the natural watercourse, upon the lands of Ford, to his injury and damage, they should return a verdict in his favor.

At the request of the railroad company, the court gave instruction No. 10, to the effect that the company would not be liable to Ford for loss occasioned by an act of God if its own negligence did not contribute to the damage alleged; that, if the damage to Ford was caused by an extraordinary freshet which could not have been reasonably foreseen or provided against—in other words, an act of God. the proof of such fact would be a perfect shield, and Ford could not recover. The court also granted, over Ford's objection, instructions Nos. 5 and 7, as follows:

"No. 5. The jury are instructed that, if you find from the evidence that the waters of Tupelo Gum Creek were retarded in their flow by reason of drifts and logs caught under the bridges along the public highway and on fences, and on account of brush, trees and standing timber in said creek, over which the defendant company had no control and for which it was not liable, and this caused the waters to back up in said creek and to cause additional overflow and damage to this plaintiff, then· the plaintiff would not be entitled to recover."

"No. 7. The jury are instructed that, if you find from the evidence that the plaintiff failed to keep the drift and logs out of Tupelo Gum Creek upon his land, and this caused the water to be held back, and contributed in any way to the damages of which the plaintiff complains, then the plaintiff would not be entitled to recover, and your verdict should be for the defendant."

The jury returned a verdict in favor of the railroad company, and judgment was entered in its favor, from which is this appeal.

1. The court erred in not granting appellant's prayers for instructions 1 and 6. These prayers were predicated upon the doctrine announced by this court in *St. L. S. W. Ry. Co.* v. *Mackey*, 95 Ark. 297, 300, and cases there cited, as follows: "The act of God which excuses must be not only the proximate cause but the sole cause. And where the act of God is the cause of the injury, but the act of the party so mingles with it as to be also an efficient and cooperating cause, the party will be still responsible." See also the later cases of *St. Louis, etc., Ry. Co.* v. *Steel*, 129 Ark. 520-527; *Arkansas Land & Lbr. Co.* v. *Cook*, 157 Ark. 245-253. These prayers for instructions were not covered by instruction No. 10 given at the instance of the appellee. Moreover, instruction No. 10 as framed did not correctly declare the law applicable to the facts, and was in conflict with appellant's prayers numbered one and six.

Prayers for instructions numbered 5 and 7 for the appellee were not properly framed, and the court erred in granting the same. There was no testimony, as we view the record, to justify the court in submitting to the jury the issue as to whether or not the appellant was negligent in failing to keep the drift and logs out of Tupelo Gum Creek where the same flowed through his land. The appellant had no control over the public highway, and it was not his duty to dislodge any drift or logs that might have been caught under the bridge upon such highway. Therefore these instructions were abstract; and, furthermore, they ignored the appellant's contention, bottomed upon the testimony in his behalf, tending to prove that the negligence of the appellee in the manner of the digging of the ditch contributed to, and was a concurring and cooperating proximate and efficient cause with, the unprecedented floods in causing the obstructions in and overflow of Tupelo Gum Creek upon the appellant's lands.

2. The court erred in allowing the introduction of photographs without first requiring the appellee to lay the foundation for the introduction of such photographs by showing that they were correct representations or reproductions of the conditions of the *locus in quo* at the time of the alleged injury and damage to the appellant. Photographs, to be competent testimony, must be shown by extrinsic evidence to be true and faithful representations of the place or subject as it existed at the time involved in the controversy. *K. C. S. R. Co. v. Morris,* 80 Ark. 528; *Sellers v. State,* 93 Ark. 313; *Zinn and Chaney v. State,* 135 Ark. 342; 22 C. J. 919; 10 R. C. L. 943; *Harris v. Quincy,* 171 Mass. 472, 50 N. E. 1042.

For the errors indicated the judgment is reversed, and the cause remanded for a new trial.