THE DERMOTT GROCERY & COMMISSION COMPANY OF EUDORA *v.* MEYER.

4-4512

Opinion delivered February 8, 1937.

592

*John Baxter* and *Shields M. Goodwin,* for appellant.
*W. W. Grubbs* and *J. R. Wilson,* for appellee.

MEHAFFY, J.   Appellee, Alvin Meyer, brought suit in the Chicot circuit court against the appellant for damages on account of personal injuries sustained by him on September 13, 1933, and alleged that he was injured by the negligence of a driver of a truck owned and operated by appellant.   The appellee, Meyer, was driving a Ford coupe from the standard oil station at Grand Lake, to his home at Readland, a distance of several miles.  He left the oil station at about 3 o'clock in the afternoon, and Mrs. Hazel Kennedy was with him in his car. They were traveling south on the highway and there were two trucks traveling north on the highway; one owned by L. L. Lewis, doing business as the Eudora Ice Company, and one owned and operated by the appellant. Jesse Smith was the driver of the ice truck and Jake Moore was the driver of appellant's truck.

The evidence tended to show that while appellee and Mrs. Kennedy were traveling south on highway 65 they saw the two trucks coming toward them side by side, the trucks traveling north.   The trucks were racing. There were two slight curves in the road and they saw the trucks at the second curve.

Mrs. Kennedy testified that she remarked: "Those two trucks are running a race," and she knew they were in danger and told the appellee he had better stop.  When she told him that, he pulled over to the side of the road as far as he could and stopped.   When the trucks got right up in front of appellee's car, the Dermott Grocery truck pulled a little back toward the ice truck, and the front wheels collided on both trucks.   The trucks had been practically even for a considerable distance.   The Dermott Grocery truck veered toward the ice truck and about that time one of the trucks hit the Ford car.  Both Mrs. Kennedy and the appellee were injured severely.

She, also, testified that as soon as they observed the trucks, they moved along at a very slow rate, and parked their car before the wreck occurred. The trucks did not attempt to slow up. There was no obstruction to keep them from seeing the trucks except a cottonwood tree on the side of the road; that did not obstruct the trucks from view but for an instant.

Julius Hester testified in substance that he was traveling on highway 65 and saw the two trucks coming. They were traveling north and were almost side by side. The ice truck was just behind the Dermott Grocery truck when witness saw them. He said after a little bit it ran up beside the Dermott truck and every time it tried to pass the Dermott truck weaved out into the highway to keep him back, and a little after that they hit into Mr. Meyer. The trucks hit each other before they hit Mr. Meyer. Witness stopped before the accident. He was about three car lengths behind Mr. Meyer, and when Meyer stopped, he stopped. Witness said when he saw the trucks they were down the road a good piece and were weaving and racing. When witness first saw the trucks the Dermott Grocery truck was half a length ahead of the ice truck; when the wreck occurred they were even. The trucks were side by side and ran into each other, and the ice truck came back and hit appellee's car.

There were several other witnesses who testified, and their testimony corroborated the testimony of Hester and Mrs. Kennedy, but we do not copy it, for appellant states that it is conceded that there is evidence in the record from which the jury might have found that appellant was responsible for the collision which resulted in Meyer's injuries. The jury was warranted in finding that the trucks were racing and that when the ice truck undertook to pass appellant's truck the appellant's truck veered to the left to prevent its passing, and at that time they struck each other and then the ice truck struck appellee's car. Appellee had stopped his car and parked as far to the right side of the road as he could.

There was a verdict and judgment for $6,250 in favor of appellee, and to reverse said judgment this appeal is prosecuted.

The appellant contends for a reversal first because it says that the court erred in not admitting pictures Nos. 2 and 3 offered by witness C. B. Bauman. Picture No. 1 was introduced and appellant offered pictures Nos. 2 and 3 for the purpose of showing the width of the highway and of showing the highway up to Landi's store, and showing where highway 65 turns. In the first place, everything that the appellant says it wanted to introduce the pictures for is shown in picture No. 1, and witnesses testified clearly as to width of the highway, so that there could be no doubt about the jury's understanding the situation. Again, the pictures were made long after the accident, and the evidence shows that at the time of the accident the grass on the shoulders and in the ditch was waist high, and at the time the pictures were taken the grass had been cut. Besides, pictures Nos. 2 and 3 had cars, placed by the appellant.

Appellant, to sustain his contention, calls attention first to the case of *LeGrande* v. *Arkansas Oak Flooring Co.*, 155 Ark. 585, 245 S. W. 38. The court in that case said: "The photographs were duly authenticated. They were shown to be correct representations of the *locus in quo* at the time the appellant was injured. They were therefore admissible as evidence to aid the court or jury to understand the evidence, and witnesses to explain their testimony."

The photographs in the present case are not correct representations of the situation at the time appellee was injured, and if they were, it was not error to refuse to permit their introduction, because there was nothing to explain that the jury could not thoroughly understand from the testimony and from photograph No. 1 which was introduced in evidence.

Appellant next calls attention to and relies on the case of *St. Louis-S. F. Ry. Co.* v. *Horn,* 168 Ark. 191, 269 S. W. 576. In that case the court said: "The photographer testified that the pictures were absolutely accurate, and that they truly portrayed the scene of the injury, but,

as before stated, he admitted that a person merely looking at the pictures could not tell the distance from the highway crossing to a point up the track. This did not, we think, destroy the value of the photographs as evidence.''

The court in that case said that it was difficult to see how any prejudice resulted from the introduction of the pictures.

Attention is next called to the case of *Graves* v. *Jewell Tea Co.*, 180 Ark. 980, 23 S. W. (2d) 972. In that case the court says that the evidence showed that the photographs were the exact reproductions of the situation, with the exception of Murphy's car, which had been removed. The court then quotes from the case of *Sellers* v. *State,* where the photographs were held to be inadmissible, and a reversal was had because of that.

Whether a photograph is sufficiently verified as a proper representation, and whether it would be helpful to the jury, are preliminary questions to be determined by the judge presiding at the trial, who is invested with considerable discretion in determining as to the admissibility of the evidence, and whose action in the premises will not ordinarily be reviewed by an appellate court. 22 C. J. 921, 922.

In the case of *Blair* v. *State,* 69 Ark. 558, 64 S. W. 948, while the court held that diagrams and photographs were admissible when shown to be correct, the court stated: ''But the exclusion of them in this case was not prejudicial, because the testimony of witnesses was sufficiently full and explicit to enable the jury to clearly understand what the diagram and table were intended to show.''

There was no error in the court's refusal to permit the introduction of photographs Nos. 2 and 3. *Young* v. *State,* 144 Ark. 71, 221 S. W. 478; *Tillman* v. *State,* 112 Ark. 236, 166 S. W. 582; *Zinn & Cheney* v. *State,* 135 Ark. 342, 205 S. W. 704; *Sellers* v. *State,* 91 Ark. 175, 120 S. W. 840.

Appellant next contends that the court below should have admitted the testimony of Jesse Smith. The appellant's attorney asked Smith this question: ''Jesse, who

was at fault?'' and it is argued that Smith would have answered that he was willing to say that he was at fault. This question was not proper, and the court did not err in excluding it.

While the evidence shows that Smith, as well as the driver of the other truck, was at fault, yet this was the very question to be determined by the jury, and not by the witness. Witnesses testify as to facts, and whether any one is negligent, or in the exercise of care, is a question for the jury. The witness testifies as to facts, and the jury draws the conclusion.

''Inasmuch as the jury is to fix the standard of conduct in a given case, a witness will not be allowed to characterize the conduct of the party as careful, or reasonable, or the reverse.'' Chamberlayne Trial Evidence, pp. 895, 896.

Appellant finally contends that the judgment should be reversed because the verdict is excessive. Witnesses testified as to the injury of appellee, and the appellee himself testified that he was 26 years old when the collision occurred, was receiving $3.40 a day, and he remembered when he was in the hospital that he had been injured. When he became conscious he was in the hospital at Greenville, Mississippi, and his mother was with him. He suffered great pain with his neck, head, arm, side and nose; he did not know where he was until he was told; but when he became conscious his right arm was in a cast, his nose was broken, and he had received a severe blow on the head. His left eye was hemorrhaged and bloodshot, his face was blue and cut and scratched up; was bruised and his right leg hurt him, and he had a pain in his stomach and abdomen; he remained in the hospital 11 days. After he returned home he became dizzy, and before he could get undressed for bed had a fainting and dizzy spell, and collapsed. He was not able to work any for a year and a half, and after that period still had trouble with his head; his right wrist was broken and he does not have the strength in it that he formerly had; since the accident he has not been able to do the same kind of manual labor that he did before; he can only work a few days at a time. Before the accident he had

always been healthy. Appellee has tried to remember what happened from the time he left work until he became conscious in the hospital, but is unable to remember anything about the accident. He had received $1,990 from the Metropolitan Casualty. Insurance Company, who carried insurance for the Eudora Ice Company, and signed a covenant not to sue the ice company.

Dr. E. P. McGehee, who had been engaged in the practice of medicine for forty years, examined the appellee, found that he had low blood pressure, a fractured nose and a cavity in the cheek bone, and that the nasal condition gave him trouble in breathing. There was a fracture of the right wrist, and he does not have the use of it as he did before. He was unconscious and there was no other way to explain the loss of memory for the length of time, except it was due to a concussion of the brain. His disability is probably 50 per cent. It would not be unusual for his condition to result in mental trouble later in life.

Other witnesses testified as to his injury and the extent thereof. The amount of appellee's damages was, under the testimony, a question for the jury. The jury are the triers not only of the question of liability, but of the amount of damages, and if the verdict is sustained by substantial evidence, this court cannot reverse.

The damages in cases of this kind is compensation, and what will be a fair and just compensation, is a question of fact, the determination of which depends upon the credibility of the witnesses and the weight of their testimony. The jury, in determining the amount of damages that should be awarded, takes into consideration the character of the injury, the extent of it, and if permanent, the life expectancy of the injured party, and both physical and mental pain and anguish. *Coca-Cola Bottling Co.* v. *McNeece,* 191 Ark. 609, 87 S. W. (2d) 38; *American Refrigerator Transit Co.* v. *Stroope,* 191 Ark. 955, 88 S. W. (2d) 840; *Postal Telegraph-Cable Company* v. *White,* 190 Ark. 365, 80 S. W. (2d) 633; *Arkansas P. & L. Co.* v. *Hughes,* 189 Ark. 1015, 76 S. W. (2d) 53; *Gaster* v. *Hicks,* 181 Ark. 299, 25 S. W. (2d) 760; *Ragland* v. *Snotzmeier,* 186 Ark. 778, 55 S. W. (2d) 923;

*Mississippi River Fuel Corp.* v. *Senn,* 184 Ark. 554, 43 S. W. (2d) 255.

It is our conclusion that the verdict is supported by a preponderance of the evidence both as to the question of liability and the amount of damages awarded. The judgment is, therefore, affirmed.