74

MISSOURI PACIFIC RAILROAD Company and A.
J. MOORE v. Elva Green WARD, Adm'x

5-5819                                    477 S.W. 2d 835

Opinion delivered March 13, 1972
[Rehearing denied April 17, 1972.]

*William J. Smith* and *Boyce R. Love,* for appellants.

*Gordon, Gordon & Eddy,* for appellee.

LYLE BROWN, Justice. William Ward, the lone oc-
cupant of a pickup truck, was killed at a rural railroad
crossing near Plumerville in Conway County. Appel-
lee, the administratrix of his estate, recovered judgment
for $75,000 for the widow and $10,000 for mental anguish
to each of three adult children, a total of $105,000. Ap-
pellants advance five points for reversal. Only a few of the
details relating to the collision are pertinent to a deter-
mination of the issues. Such facts as are important will
be related as we discuss the points for reversal.

Point I. *The court erred in refusing to give the jury
verdict forms which would permit separate findings for
or against the two separate defendants.* At the conclusion
of the testimony all the defendants except the railroad and
the engineer were removed from the case. Also, the issues
upon which appellee predicated claim to liability were
reduced to the single issue of blowing the whistle or
ringing the bell. If the engineer was negligent in not
ringing the bell or blowing the whistle, and if that
negligence was the proximate cause of the collision, both
the railroad and the engineer would be liable. If the
engineer did in fact ring the bell or blow the whistle,
for the requisite time then neither defendant would be
liable. Consequently, we do not perceive any error in sub-
mitting only one form of verdict as to liability of the two
defendants.

Point II. *The trial court should have granted a mis-
trial when attorney for appellee in closing argument
stated that the railroad crew is always present to testify
but that motorists are always killed and unavailable
to testify in crossing accidents.* In discussing the re-
quirement that the railroad employees must blow the

whistle or ring the bell, the following colloquy occurred:

> Mr. Gordon, for appellee: The reason for it is obvious. A locomotive, if it ever strikes anything, generally he doesn't live to tell what happened to him. Mr. Ward is not here to tell you about whether or not he looked. It's very seldom when we have a railroad crossing accident that people in the vehicle are ever here to tell you about their side of the story.

> Mr. Love, for appellants: Your Honor, I'm going to object to that testimony. . .We want to ask for a mistrial on the basis of it.

The trial judge admonished the jury not to consider the statements made in closing arguments that were outside the record. (Appellant would have been entitled to a stronger admonition had it been requested.) The motion for a mistrial was overruled.

Mr. Gordon's argument was not proper; however, we think any prejudicial effect the remarks was cured by the admonition of the court. The trial court has a wide range of discretion in matters of this nature and we should not reverse unless a prejudicial effect is obvious. The trial judge is in better position than we to determine the effect of any unwarranted argument. Many of our cases so hold, among which are *Kansas City Southern Ry. Co.* v. *Murphy,* 74 Ark. 256, 85 S.W. 428 (1905); and *Briley* v. *White,* 209 Ark. 941, 193 S.W. 2d 326 (1946).

Point III. *The trial court was in error in permitting appellee's attorney to elicit testimony from Bernard Hardeman that he was in position to have heard the whistle or the bell if sounded.* The same issue was before this court in the recent case of *Missouri Pacific R.R. Co.* v. *McDaniel,* 252 Ark. 586, 483 S.W. 2d 569. Our holding was adverse to appellants' claim under this point. It is what is known as "shorthand knowledge" and not an opinion. *Baltimore C. & A. Ry. Co.* v. *Turner,* 136 A. 609 (1947); *Chicago C. & A. Ry. Co.* v. *Dillon,* 15 N.E. 181 (1888).

Point IV. *It was prejudicial error for the court to per-*

*mit the introduction of three photographs of the truck in which the decedent was riding.* We agree that the introduction of the pictures served no useful purpose. They revealed the point of impact but that was irrelevant. Concededly, at the time they were introduced there were several issues of negligence still in the case, such as failure to keep a lookout, and one or more of the pictures may have been at that time appropriate as going to issues which were later withdrawn. Be that as it may, we are unable to say that the trial court abused its discretion. Whether photographs are helpful to the jury is to be determined by the presiding judge and again, considerable discretion is vested in the trial court. *Dermott Grocery & Comm'n. Co.* v. *Meyer,* 193 Ark. 591, 101 S.W. 2d 443 (1937).

Point V. *The court erred in failing to give a requested instruction concerning the law that when a train is plainly discoverable by other means, signals cease to become a factor.* Appellants offered and were refused this instruction:

When the presence of a train approaching *or occupying a crossing* is plainly discoverable by means other than *lights, signals or flag men, then the failure to have crossing lights, crossing signals or a flag man at the crossing* and the failure of the trainmen to ring the bell or blow the whistle are not relevant factors for your consideration. (Italics supplied.)

The language we have italicized covers factors which were not issues in the case and resulted in making an abstract statement of the general law. As early as 1854 this court condemned instructions containing statements of legal propositions having no bearing on the case made by the evidence. *The State Bank* v. *McGuire,* 14 Ark. 530. More recently on the point is the case of *Harkrider* v. *Cox,* 230 Ark. 155, 321 S.W. 2d 226 (1959).

The trial court did not state a reason for refusing the instruction but if there was a sound reason for refusing it, we should approve the action.

Point VI. *The verdicts are excessive.* The elements of

recovery on behalf of the widow were for loss of support and for her mental anguish. The deceased was forty-five years of age and his widow was fifty-three years old. For several years immediately prior to his death Mr. Ward worked on a large farm. For the years 1968, 1969, and 1970, his wages averaged $3,378. He was furnished a house; he was furnished a pasture for his cattle which he bought, fed out, and sold; he raised hogs, chickens, and rabbits; he bought and sold used furniture; in the winter he trapped for mink and racoon; and he raised a truck garden each year, consuming and selling the products therefrom. In addition to his regular average salary he was paid a bonus averaging fifty cents to one dollar for each day he worked on the farm. He was sober, industrious, and frugal, and most of his earnings went to support his home and family.

Now as to the widow's mental anguish. We find these statements in the abstract of her testimony. "We liked to do things together. We both liked to fish and we went fishing quite frequently. We went to the car races near Oppelo. . .It is terribly lonesome without my husband and I still miss him. . .I have difficulty sleeping and I have been depressed." We have many times said there is no standard by which mental suffering may be evaluated. The jury saw and heard the witness testify and was in better position to judge of her mental anguish than is this court. Furthermore, we have no way of knowing the precise amount allowed for her mental anguish. All in all, we are unable to say that the award for the widow is excessive when it covered loss of contributions, services, society, companionship, consortium, and mental anguish.

We turn now to the mental anguish awarded the three children. We find no error in the award given the youngest son, William Ward. He was twenty years old ·at the time of his father's death and lived with his parents. There was evidence that the son was "terribly upset" and that emotional disturbance has continued since that time. As to the two daughters, they are married and have established homes for themselves. We have searched the abstract and find no substantial evidence that their grief was more than normal. *Peugh* v. *Oliger*, 233 Ark. 281, 345 S.W. 2d 610 (1961). The awards made to the two daughters are set aside.

Affirmed as modified.

BYRD, J., dissents as to modification. FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result and majority opinion. I feel, however, that the instruction set out in Point V is inherently erroneous for the reasons stated in my dissent in *Koch, Adm'r.* v. *Mo. Pac. R. R. Co.*, 248 Ark. 1251, 455 S.W. 2d 858.