MUTUAL LIFE INSURANCE COMPANY *v.* REYNOLDS.

Opinion delivered December 3, 1906.

1. AGENCY—AUTHORITY OF SPECIAL AGENT.—A special agent must act within the scope of his powers. (Page 204.)

2. INSURANCE—POWER OF SOLICITING AGENT.—A soliciting agent for an in-insurance company has no authority to appoint an agent for the purpose of soliciting insurance on behalf of his company, or of receiving premiums therefor. (Page 204.)

3. SPECIAL AGENT—POWERS.—One who deals with another claiming to be soliciting agent of a life insurance company should ascertain the scope of his authority before paying him the premium for insurance for which application had been made. (Page 204.)

Appeal from Marion Circuit Court; *Elbridge G. Mitchell,* Judge; reversed.

Reynolds sued the Mutual Life Insurance Company and E. V. M. Powell, alleging that he had paid $329.90 as the first premium on a policy of $5,000 which the insurance company declined to issue, and he sought to recover the premium.

The insurance company denied that it received the sum of money set out, or that any one authorized to do so received any money on account of the proposed insurance.

Plaintiff's testimony was to the effect that he paid the first premium as alleged to Powell, who executed a binding receipt therefor, countersigned by Powell as collecting agent. The application contained no receipt for the premium.

R. M. Carter testified:

"My only authority is to solicit applications and send them to Remmel, and afterwards to deliver the policies to the applicants and then to collect the premium. About the 1st of September, 1904, I received by mail from Powell the plaintiff's application. Powell asked me to place it for him, as he had just tried to get a $10,000 policy for plaintiff in the company for which Powell was agent, and that the Security Mutual had rejected his application. Powell informed me that plaintiff would pay the premium as soon as the policy should be delivered. As a courtesy to Powell, I signed the application as agent, and forwarded it to Remmel. Seeing that the application indicated that no money had been paid by plaintiff, and having such information from Powell, I executed my personal settlement note for the premium, and sent it along with the application. I have never at any time received any money or other consideration from any source on account of said application, and I never knew that plaintiff had paid any money to Powell, or that Powell had given Reynolds a binding receipt, until some time in November, 1904, when the Bank of Batesville presented to me the draft of plaintiff for that sum accompanied by the binding receipt here exhibited. I have never had possession of any binding receipts for any insurance company and never saw one until I saw this one attached to plaintiff's draft. I never, prior to the draft which plaintiff drew on Remmel, advised Remmel that the application had been sent in by Powell or that Powell had any connection with it."

H. L. Remmel testified:

"I am manager of the defendant company for Arkansas, and have exclusive authority to appoint agents to solicit applications for insurance for said company in that State on blanks furnished to me by the company and by me furnished to the agents. In September, 1904, R. M. Carter, one of my agents, sent me the application of Ben Reynolds for $5,000 policy, which application was signed by Carter as soliciting agent. It was recorded in my office and sent to the home office in New York. The application is in the form already presented. I was not informed that Powell had anything to do with it, or that Reynolds had

paid the premium, or that a binding receipt had been executed. Carter sent along with the application his personal settlement note for the premium, to be paid on delivery of the policy to Reynolds, in the event it should be issued by the company. The application signed by plaintiff showed that nothing had been paid on the premium. The custom is, when the appellant pays the premium at the time of his application and receives from the agent a binding receipt, for the agent to attach a copy of the receipt to the application. No such copy accompanied this application. * *
* I did not know until some time in December, 1904, when the draft and binding receipt attached were presented to me, that Powell had anything to do with the application of plaintiff."

Verdict and judgment were for plaintiff.

Defendant insurance company appealed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. Carter could not have made Powell the company's agent. It is settled that an agent can not delegate his authority. 10 Ark. 18; 28 Ark. 98.

2. Insurance soliciting agents must act strictly within the limits of their powers. 54 Ark. 75; 60 Ark. 532; 62 Ark. 348; 88 S. W. 950.

3. Appellee's duty was to ascertain the scope of Powell's authority before paying the money to him. 28 Ark. 98; 62 Ark. 40; 46 Ark. 210; 52 Ark. 435.

WOOD, J. There was no evidence to support the verdict against appellant. Powell was not its agent, and had no authority to represent it. There is no evidence to warrant the conclusion that appellant "held him out" as its agent. Special agents must act strictly within the limits of their powers. *Amer. Ins. Co.* v. *Hampton,* 54 Ark. 75, 78; *Burlington Ins. Co.* v. *Kennerly,* 60 Ark. 532; *German-American Ins. Co.* v. *Humphrey,* 62 Ark. 348; *Mutual Life Ins. Co.* v. *Abbey,* 76 Ark. 328.

Carter had no authority to appoint Powell agent for appellant. That was exclusively the province of H. L. Remmel.

Appellee should have ascertained the scope of Powell's authority before paying him the premium. *Danley* v. *Crawl,* 28 Ark. 98; *City Electric Ry. Co.* v. *First National Bank,* 62 Ark. 33.

Powell alone, under the proof, was liable to appellee for the unauthorized premium which he had collected.

Reversed and remanded for new trial.