SOUTHWESTERN BELL TELEPHONE COMPANY *v.* BALESH.

4-3569

Opinion delivered November 12, 1934.

*H. L. Ponder, W. R. Donham* and *Edward B. Downie,* for appellants.

*Pace & Davis,* for appellee.

HUMPHREYS, J. Appellee, administratrix of the estate of her deceased husband, brought suit against the appellants for the estate and for the benefit of herself and minor children, to recover damages on account of the alleged negligent killing of deceased resulting from a collision of his car with a Ford truck belonging to appellant, Southwestern Bell Telephone Company, which was driven by Herman Avery, the other appellant.

Appellant filed an answer denying the material allegations of the complaint, and pleading that the injuries and death of deceased resulted from his own negligence.

The cause was submitted to a jury upon the issues joined, the evidence adduced, and the instructions of the court, which resulted in a verdict and consequent judgment against appellants in favor of appellee for the benefit of herself and minor children for the sum of $50,000, from which is this appeal.

Appellants contend for a reversal of the judgment on the ground that the evidence is insufficient to support the verdict. In determining this question on appeal, the testimony in the case must be viewed in the most favorable light to appellee, and if, thus viewing it, there is any substantial evidence supporting the verdict, it cannot be disturbed by this court.

According to the evidence introduced by appellee, her now deceased husband was en route to Little Rock on the Hot Springs highway the morning of June 24, 1933, in his Cadillac sedan, which he was driving at the rate of thirty-five or forty miles an hour; that, just before entering the village of Douglasville, he overtook appellant's truck, which was being driven at a speed of fifteen or twenty miles an hour; that, as he approached the truck, he blew his horn when forty feet behind it, and again when he was ten feet behind it, as a signal that he would pass around it to the left; that when his front wheels were opposite the hind wheels of the truck, the driver of the truck, without checking his speed and without putting out his hand or giving any signal, suddenly turned to the left almost at right angles across the highway, and that before he could get out of the way of the truck by speeding up and turning to the left as far as possible, the collision occurred; that the collision caused his car to lose its balance and swerve or zig-zag at a high rate of speed along the highway for a considerable distance until it turned over and fatally injured him; that he was unable to regain control of his car after the collision.

The evidence thus detailed is substantial and sufficient to sustain the verdict. Although appellant introduced evidence tending to show that deceased was to blame for the collision, and that he had or could have regained control of his car after the collision, in the exercise of reasonable care, it must be remembered that the jury and not the court are the sole judges of the credibility of the witnesses and the weight to be attached to the evidence. The trial court must be sustained in his refusal to instruct a verdict for appellants on the ground of the alleged insufficiency of the evidence to establish liability.

Learned counsel for appellants strenuously insist upon a reversal of the judgment on account of a number of instructions given by the trial court over their general and specific objections and the refusal of the court to give a number of instructions requested by them, to which refusal they objected and excepted. We have carefully read and considered the instructions given and refused and have concluded that the trial court correctly instructed the jury upon the issues involved responsive to the evidence in the case. We regard the exceptions to the giving and refusal of some of the instructions of sufficient importance to more specifically state our reasons for disposing of them.

Appellants specifically objected to the giving of the court's oral instruction No. 2 because they allege he ignored their defense of contributory negligence on the part of deceased. The last sentence in the instruction is as follows:

"But if it (the evidence) preponderates in her (appellee's) favor on all the material allegations, she would be entitled to recover a verdict."

Appellants argue that this part of the instruction necessarily means that, if the jury should find that the evidence preponderates in favor of appellee on all the material allegations in her complaint, she would be entitled to recover. The instruction does not say so in words, and we do not think it susceptible of such a construction. It means all the allegations arising in the case, whether contained in the complaint or other pleadings. The language used does not ignore the defense of contributory negligence, and it should not be interpreted to do so by reading the word "complaint" into it. We are quite sure the jury did not so understand it in view of the fact that they were told in other instructions that, if the deceased met his death on account of his own negligence, appellee could not recover.

Appellants objected generally to the giving of the court's oral instruction No. 3 and now contend that it was inherently erroneous because it opened or began with the following sentence: "This accident, gentlemen,

was due to an automobile collision on the public highway.''

They argue that the court told the jury in this sentence that the injuries and death of the deceased were due to the collision. The court did not so state, but said the accident was due to a collision on the highway, which was nothing more than a general statement of the kind and character of case before them for consideration. It was not tantamount to telling them that the injuries and death of deceased were due directly to the collision or that the collision was the proximate cause of the injuries and death of the deceased. No specific objection was made on the ground that the sentence was susceptible of the construction they now give it. The court did not err in giving the instruction.

Appellants objected specifically to the giving of instruction No. 6 on the ground that the effect thereof was to make them insurers of the safety of deceased. That part of the instruction objected to is the exact language of a part of our traffic statute, and is as follows: ''I instruct you, gentlemen, that 'the driver of any vehicle upon a highway, before starting, stopping, or turning from a direct line, shall first see that such movement can be made in safety, and, whenever the operation of another vehicle may be affected by such movement, shall give a signal, plainly visible to the driver of such other vehicle, of the intention to make such movement'.''

The effect of giving this instruction was to tell the jury that, if the driver of the truck turned to the left without first seeing whether he could make the turn in safety or without giving a signal plainly visible to others that he was going to make the turn, he would be guilty of negligence, which was quite different from saying to them that they were insurers of the safety of deceased, for the instruction left it to the jury to find from the evidence whether or not he was guilty of such acts in turning the truck to the left and also left it to the jury to find from the evidence whether deceased himself caused his injuries and death by his own negligence. The fact that the instruction given by the court was in the exact language of a traffic statute does not keep it from

being a correct declaration of law applicable to the situation and facts in the case. If the court had told the jury that appellants violated the traffic laws of the State in turning to the left and for that reason they became insurers of the safety of deceased, then the instruction would have been erroneous and subject to criticism made by appellants.

Appellants objected to the giving of instruction No. 14 and now argue that it constituted reversible error to give it because it acquitted deceased of all negligence except driving at a greater rate of speed than an ordinarily prudent man would have done. In other words, that the instruction had the effect of limiting contributory negligence on the part of deceased to speeding or fast driving. It is argued that the last sentence in the instruction had this effect, which sentence is as follows:

"But if you further find that at the time he approached the truck and was passing the same he was driving his car at such a rate of speed as an ordinarily prudent man would have driven under the circumstances, then he was not guilty of negligence."

The jury could not have concluded from the sentence that the court intended to cover the entire issue of contributory negligence, especially when read in connection with other instructions given on the subject of contributory negligence. The meaning of the sentence is that if deceased was driving at the speed that an ordinary person would have driven under the circumstances, he was not guilty of negligence in regard to speed. Although the phraseology of the sentence was poor, its meaning was clear, and, as thus construed, did not mislead the jury.

Appellants objected generally to the court's modification of their requested instruction No. 16 on the ground that there was no evidence to support or justify the modification. The instruction, as requested, reads as follows: "You are instructed that it is the duty of the deceased to exercise ordinary care even after the collision, and if you find from a preponderance of the evidence that after the collision he ran his car at an excessive or unreasonable rate of speed and in so doing he failed under all the circumstances to exercise ordinary care;

and if you further find that such failure on his part contributed to his injuries and death, then the plaintiff cannot recover, and your verdict will be for defendants.''

The court gave the instruction as requested after adding the following words: ''Unless you further believe or find that the deceased had lost control of his car by reason of his car being negligently struck by the truck.'' There is much evidence in the record to the effect that deceased lost control of his car when the collision occurred, and that he was unable to regain control thereof, so the modification was responsive to the evidence.

Appellants also objected specifically to the giving of the instruction as modified on the alleged ground that the modification assumed that the car of deceased was negligently struck by the truck of appellants. We are unable to discover such an assumption in the modification. It unmistakably submitted the issues of whether deceased lost control of his car, and whether he lost control thereof by reason of his car being negligently struck by the truck. The instruction, as modified, was a correct declaration of law responsive to the evidence in the case.

In our examination of the instructions, we find that quite a number of those requested by appellants and refused by the court were fully covered by other instructions given by the court. Courts are not required in instructing juries to indulge in repetitions and duplications.

As stated above, we have carefully examined each and every instruction given and refused and have concluded that the trial court correctly declared the law applicable to the issues and evidence in the case.

Appellants contend that the verdict is excessive. The jury was correctly instructed as to the measure of damages. A verdict of $50,000 was awarded the widow and children for their pecuniary loss, including damages to the children for the loss of parental care and moral guidance and development. No award was made to the estate of deceased.

The question for our determination is whether this compensatory award is supported by the evidence. The deceased had been a very prosperous merchant in New York City and Hot Springs for many years. He was an

importer of Oriental rugs, fine laces and linens and sold his goods at auction in a business house in Hot Springs. In addition to supporting his family in a luxurious manner, he accumulated sufficient out of his business to buy a home which cost $20,000 and a business house which cost $105,000 and to accumulate a stock of goods valued at about $60,000 with an outstanding commercial indebtedness of about $5,000. In 1929, just before the depression, he bought an adjoining business house on a credit for $95,000. Although he continued to make money in his business until he went into voluntary bankruptcy a few months before his death, the net returns therefrom were insufficient to keep up the principal and interest payments and taxes on his real estate, after paying his living expenses; so a few months before his death, he went into voluntary bankruptcy and closed his store. He then compromised with his creditors on the basis that they accept all his real estate in full settlement of his indebtedness, leaving his stock of goods clear. He was on his way to Little Rock in connection with his bankruptcy proceedings when he was killed. Until he took the benefit of the bankruptcy act, he had contributed about $7,000 a year to his wife and children for their support and education. In addition to educating his children, he was giving them music and dramatic lessons. He was an attentive and dutiful husband and father, making a happy home for his wife and four children, ranging in age from 7 to 16 years. Physically he was a strong man, able to carry on the auction business during the day and until late at night, which he did. He was 51 years of age at the time of his death and had an expectancy of 20 years. His financial troubles resulted from his real estate investments and not from any substantial shrinkage in his business. It is reasonably deducible from the evidence that, had he lived, in view of his composition with his creditors, he would have been able to continue his business successfully and to have contributed about as much in the future to his family as he had in the past. He was familiar with his line of business, having spent his entire life in it. He was an exceptional auctioneer and business man, and knew well how to earn a dollar. Based

upon his earning capacity and expectancy under the accepted rule for ascertaining the present value of the total amount he would have contributed to his family, $50,000 in cash is much less than the present value the total contribution would figure. This being true, it would not be permissible for this court to invade the province of the jury to scale down the amount or reverse the judgment.

No error appearing, the judgment is affirmed.

In the opinion of Justices SMITH and McHANEY the judgment is excessive and should be reduced.