Mutual Benefit Health & Accident Association
v. Basham.

4-4049

Opinion delivered November 18, 1935.

*Patterson & Patterson*, for appellant.

*Reynolds & Maze*, for appellee.

MEHAFFY, J. On May 18, 1923, the appellant issued its policy insuring J. M. Basham against bodily injury sustained through purely accidental means, independently and exclusively of disease, and all other causes.

The appellee, Mamie Basham, was named as beneficiary. J. M. Basham died on January 7, 1934. On July 14, 1934, the appellee brought this suit in the Johnson Circuit Court, alleging, among other things, that the said J. M. Basham had paid the premiums on said policy up to the date of his death; that Mamie Basham was the wife of J. M. Basham, and the beneficiary in said policy; that on December 27, 1933, during the life of the policy, the insured, J. M. Basham, sustained through accidental means an injury to his great toe on the right foot, from which injury he was confined to his bed under the care of physicians, and as a direct result of said injury he died on January 7, 1934; that all the dues on

said policy had been paid; that the beneficiary has made proof of loss and duly performed all the conditions of the policy. She asked for judgment for $2,000, the face of the policy, a twelve per cent. penalty, and reasonable attorney's fees.

The appellant answered admitting that the appellant undertook to insure the said J. M. Basham as alleged in the complaint, and admitted that said policy number was correctly set forth in appellee's complaint; admitted that Mamie Basham was the wife of J. M. Basham, and named as beneficiary, but denied that said J. M. Basham carried and kept said policy until the date of his death; denied that on December 27, 1933, during the life of said policy, the said J. M. Basham sustained through accidental means an injury to the great toe on his right foot by dropping some sort of a plank on said toe, or otherwise, and denied that the death of Basham was caused, directly or indirectly, by any accident of any kind, but alleged that his death resulted from natural causes. It also denied that the dues had been paid, and that the appellant had been notified of the death of Basham; denied that proof of loss was made and all conditions performed.

On January 14, 1935, appellant filed a demurrer to plaintiff's complaint, which was on January 18, 1935, overruled by the court. Also on January 14, 1935, appellant filed a motion to require appellee to exhibit with her complaint the policy upon which the action was based. This motion was conceded by appellee, and the exhibit was filed.

The case was tried before a jury, and the jury returned a verdict for $2,000. Judgment was rendered for said amount and interest. Judgment was also entered for twelve per cent. penalty, and $350 attorney's fees.

Appellant filed motion for a new trial, which was overruled, and the case is here on appeal.

The appellee testified in substance that she was the plaintiff, and that J. M. Basham died January 7, 1934; that he received an injury on December 27, 1933, and was never able to go out after that time; was confined to his bed on January 1, 1934; the great toe on his right foot was red and angry-looking; the skin was not broken; he

came home at lunch time limping, called a physician before noon on January 1. Witness dressed his foot before the doctor called; the doctor kept his foot bandaged. Witness first called Dr. Boen and then Dr. Will Hunt, Sr. Mr. Basham had a policy of insurance with the appellant, and the premiums were paid up. The policy was exhibited together with the application for insurance.

On cross-examination she testified that she was not present when he received the injury to his toe, and does not know of her own knowledge what caused the bruise on his toe, she only noticed the blue, bruised condition. Basham's health was good before that time. After her husband fell from the scaffold and broke his foot, he had recovered fully. Only one leg was swollen.

Edward Basham's testimony was, in substance, the same as that of appellee. He also said that the bruise was right across the joint where the toe joins the foot. This started swelling, and then the whole foot started swelling. After the third day's illness, the whole leg was swollen from the ankle to the knee. Blood blisters about the size of a half-dollar came out and burst on their own accord. His leg was swollen three times the ordinary size. His left leg was not swollen at all. J. M. Basham did not complain that morning before he went to work.

On cross-examination, witness testified that his father was a contractor and worked with his men. His father was injured in the fall of 1923 and confined to his home for about ten months, and afterwards had a spell of malaria, and had flu in 1928.

David Basham, another son, testified in substance that he saw his father that morning, he was not complaining; saw him at noon, and he reported he had dropped a piece of wood on his foot; he was limping; he did not continue to work, but was confined to his home, his condition growing worse until January 7, 1934; his foot continued to swell; blisters appeared on his leg and would burst; the doctor kept his leg bandaged; his father was in good health.

Livingston Hardwicke testified that he was connected with his father in the funeral business, and had been

actively engaged in it for fifteen years. He assisted in embalming the body of J. M. Basham; the condition of his body was all right except his right leg; from the foot up to the kneecap was very badly decomposed, and for six inches above the knee was badly swollen; was about two times the size it should be; the other leg was normal.

W. M. Hardwicke testified that he was an undertaker and funeral director and had charge of the J. M. Basham funeral; found that he had blood poisoning; had a very badly swollen right leg full of blisters, and the toe was badly swollen.

Allie Kraus visited Basham when he was sick; his foot was badly swollen; his leg was bandaged and badly swollen; prior to that time his health was good.

Dr. A. L. Boen, a practicing physician living in Clarksville, testified he knew J. M. Basham during his lifetime; treated him for malaria in 1929 and 1930; was called to treat him when he died; was called on January 1, 1934, and found him with injury to his toe, which was swollen and hurting him; Basham gave the doctor a history of the case; the first day he treated Basham he told him a scantling dropped on his right toe; the skin was a little rough and swollen; found his toe in such condition as would have resulted from such an injury as he did receive; treated him from January 1 until he died; his foot and ankle were swollen, but there was nothing wrong with the other foot.

On cross-examination, Dr. Boen testified that osteomyelitis is an inflammation of the bone marrow; cellulitis is an inflammation of the connective tissues; these are separate and distinct diseases. Witness said that he made a statement of Basham's condition to the adjuster, signed and swore to it, and identified his signature. In the statement he said Basham died of osteomyelitis; he thought at the time that was true, but afterwards decided it was cellulitis. At the time he made the statement, he did not know that Basham had cellulitis; did not change his mind after he made the report until he saw his toe; when he saw his toe later, he knew it was not osteomyelitis; did not see his toe until the autopsy was held, which was in November, 1934.

W. R. Hunt testified that he was a practicing physician living in Clarksville, treated J. M. Basham in January, 1934; went to Basham's house on the morning of the sixth and stayed there several hours; Basham died shortly afterwards; found an injury to his right toe; he did not tell witness the history; he had a case of cellulitis; his right leg was swollen to two or three times its normal size.

Earl Hunt testified that he was a practicing physician and surgeon; knew Basham but did not see him before he died; examined his body at the post-mortem.

Jim Brock, a witness for appellant, testified that he knew Basham; in 1933 talked with him about his health. Basham had worked for witness in 1928 and told witness that he could not work like he did then.

Dr. H. S. Thatcher testified that he lived in Little Rock, was professor of pathology at the University of Arkansas Medical College, a director of that department, and had charge of the laboratory; had seen about ten thousand autopsies; had done about five thousand himself; he described how the autopsies were performed, and said that he made an autopsy on the body of J. M. Basham on November 3, 1934; the body had been well embalmed, and the interior well preserved; found the kidney was diseased, and no evidence of cellulitis; no evidence of blood-poisoning; cellulitis is a germ disease; there could be no infection to a man's toe without breaking the skin; was able to ascertain the cause of Basham's death; he died from chronic condition of the heart and kidneys, chronic nephritis, commonly known as Bright's disease. This disease is fatal. He showed dropsy in both sides of his chest. Dropsical condition produces a swollen condition of the leg. Dropsy first appears in the lower limbs. In nephritis the heart is usually enlarged. The heart of Basham was enlarged. Witness submitted his report of the condition found in the autopsy of Basham. His death was caused from chronic condition of heart and kidneys, chronic nephritis. This could not result from cellulitis.

On cross-examination witness said he found a bandage on the right leg and toe; the swelling, if any, had

gone out. Often one leg is swollen more than the other; in this case witness advised that it was on account of heart and kidneys; found no evidence of infection. Could have received an infection if there had been an opening. If there was a break in the skin of his toe, witness did not see it. Witness saw more of the body than the other doctors. They did not see inside of the body; did not see anything wrong with foot, toe, or leg; examined tissues' on toe and leg and found no evidence of infection.

Dr. J. R. Wayne, a practicing physician of Little Rock, testified that he was with Dr. Thatcher at the time the autopsy was held on J. M. Basham; assisted; took specimens and tabulated them; the body was in condition for accurate examination so that they could properly ascertain the cause of death; does not think cellulitis or osteomyelitis could have resulted from chronic origin without breaking the skin; Basham died from chronic nephritis and chronic myocarditis. Bright's disease and nephritis are fatal. Examined the toes, and both toes looked similar. After death, if it had been swollen, the swelling would disappear. In cases of dropsy, the swelling begins in the lower limbs and abdomen; often one limb is swollen more than the other.

On cross-examination witness said that he made notes and put down the findings of the autopsy; found no difference in measuring the right and left leg; the toe did not show any abrasion; if the toe was roughed and protruded through the skin so that bacteria could get in the blood, it would cause infection; found no evidence of infection; found no cellulitis.

Alvin Laser testified, reading excerpts from the policy.

Dr. W. R. Hunt, recalled, testified that he saw a break on the skin of Basham, and infection of the foot, and that is what killed him; does not think they could determine what killed this man with a pathological examination.

Dr. Earl Hunt, recalled, testified that he could not see where the microscopic examination would be worth anything; body was decomposed; both legs were same size; impossible to say what killed him.

Livingston Hardwicke, recalled, testified that in dropsy cases they have an excessive amount of fluid; did not find this in this case.

Appellee was recalled and testified that her husband did not complain of heart trouble or kidney trouble; was never disturbed at night.

The appellant first contends that the burden of proof was upon the appellee not only to show the death of the deceased, but also to show that his death resulted purely by accidental means. It is true that the burden of proof was on the plaintiff, as stated by appellant; and unless there is substantial evidence to show that the death of Basham resulted from accidental injury, the judgment could not be sustained.

Appellant cites and relies on *National Life & Accident Ins. Co.* v. *Hampton,* 189 Ark. 377, 72 S. W. (2d) 543, and says that that case is very similar in all respects to the present case. The court in that case said: ''It is the well-settled doctrine in this State that a jury's verdict cannot be predicated upon conjecture or speculation.'' We have many times announced this as the established rule, and adhere to it. Unless there is some substantial evidence to support the verdict, it cannot stand. But in the case relied on by appellant the court said: ''The effect of the testimony presented and heretofore quoted falls far short of the requirements of the rule as heretofore announced. No witness testified from opinion or otherwise that the insured died from the effects of any accidental injury received by him, nor does any witness testify that the fall which he received on February 8, immediately prior to his death, was even a contributing factor thereto. Neither did any witness testify to any facts or circumstances from which it might be inferred that the insured's death resulted from this fall.''

In the instant case, Dr. Boen testified that he was called to treat Basham on January 1, 1934, found him with an injury to his toe; it was swollen and hurting him. Basham told witness that he dropped a scantling on his right toe, and said it was swollen and looked as though cutis of the skin was a little rough and swollen. He found

the toe in such condition as would have resulted from such injury as he did receive. This witness also testified that he had cellulitis, although he had made a sworn statement contrary to this. In explanation of his testimony he said he did not see the toe, until the autopsy was held, and then he knew.

Dr. W. R. Hunt was called to see Basham on January 6, 1934, shortly before he died. He found an injury to his right toe; had a case of cellulitis; his right leg was swollen two or three times the normal size. When Dr. Hunt was recalled, he testified that he saw a break in the skin of Basham, and infection of the foot, and that that is what killed him.

Several witnesses testified that there was nothing wrong with him in the morning when he went to work; that he came home limping; that the toe on his right foot and right leg began to swell, and was swollen to two or three times its normal size. The doctors introduced by appellant testified that he died of Bright's disease, and this testimony was contradicted by the witnesses for the appellee.

We have many times held that this court, on appeal, in determining the sufficiency of the evidence, will consider the evidence in the light most favorable to the appellee and will indulge all reasonable inferences in favor of the judgment. *St. L. S. F. Ry. Co.* v. *Hall*, 182 Ark. 476, 32 S. W. (2d) 440; *Union Security Company* v. *Taylor*, 185 Ark. 737, 48 S. W. (2d) 1100; *Ark. Baking Co.* v. *Wyman*, 185 Ark. 310, 47 S. W. (2d) 45; *Pekin Wood Products Co.* v. *Mason*, 185 Ark. 166, 46 S. W. (2d) 798; *Ft. Smith Traction Co.* v. *Oliver*, 185 Ark. 227, 46 S. W. (2d) 647; *Sw. Gas & Elec. Co.* v. *May*, 190 Ark. 279, 78 S. W. (2d) 387; *Southwestern Bell Tel. Co.* v. *Balesh*, 189 Ark. 1085, 76 S. W. (2d) 291; *Arkadelphia Sand & Gravel Co.* v. *Knight*, 190 Ark. 386, 79 S. W. (2d) 71; *Roach* v. *Haynes*, 189 Ark. 399, 72 S. W. (2d) 532.

When the evidence is thus considered, there appears to be sufficient evidence to sustain the finding of the jury.

Appellant, however, insists that the testimony of Dr. A. L. Boen to the effect that the deceased told him he had

dropped a scantling on his toe was incompetent and inadmissible.

Testimony relative to statements by the injured persons to his attending physician as to how an accident happened and what caused it is not admissible, but in this case the answer objected to was as follows: "I was called on January 1, 1934; found him with injury to his toe, it was swollen and hurting him. He gave me a history of the case. He said he was working for Dyke Lumber Company at the time and said he dropped a scantling on his toe." The appellant objected to this testimony, and the court said: "He can state the history he received in order to diagnose the case, and for no other purpose." The appellant then moved that the evidence be excluded from the jury. It will be observed that a portion of the evidence was competent. The appellant did not ask that the particular part that was incompetent be excluded, and the witness proceeded: "He told me on the first day that I attended him that he dropped a scantling on his right toe. It was swollen, looked as though the cutis of the skin was a little rough and swollen."

A portion of this answer was objectionable, but the appellant did not object to that part of it alone, but objected to the testimony, although a portion of it was a statement of the physician as to the condition of his toe.

If appellant had wished to have that portion of the evidence which the doctor said the injured person had told him excluded, it should have requested the court to exclude that portion only.

While the burden was on the plaintiff to establish the fact that Basham's death resulted from an accidental injury, she was not required to prove this by direct testimony.

A well-connected train of circumstances is as cogent evidence of a fact as an array of direct evidence, and frequently outweighs opposing direct testimony. Any issue of fact in controversy can be established by circumstantial evidence when the circumstances adduced are such that reasonable minds might draw different conclusions. *Pekin*

*Wood Products Co.* v. *Mason,* 185 Ark. 166, 46 S. W. (2d) 798.

The direct evidence in this case that was competent, together with the circumstances, was sufficient to justify the jury in finding that Basham's death was caused by accidental means.

When David Basham testified that his father reported that he had dropped a piece of wood on his foot, objection was made and this was excluded.

It is next contended by the appellant that the court erred in giving the following instruction No. 4: "You are instructed that you are the judges of the cause of the death of J. M. Basham, and if you find from a preponderance of the evidence in this case that on the 27th day of December, 1933, the said J. M. Basham received injuries by accidental means, as alleged in the complaint, you will find for the plaintiff."

It is contended that this instruction is misleading because the jury might have assumed that the question of the manner of deceased's death was left solely to the jury regardless of the evidence. The jury could not have assumed this, because the instruction contains the statement, "if you find from the evidence."

Another objection to the instruction is, if they found any accident, regardless of that alleged in the complaint, they would find for the plaintiff. There is no merit in this contention. There was no evidence about any other accident.

They also object because the court told the jury that it was the judge of the cause of death. In appellant's instruction No. 1, given by the court, the question was submitted to the jury as to whether his death was caused by accident as alleged in the complaint. Of course, the jury was the judge of what caused his death; that was the principal question involved in the case; a question of fact, submitted to the jury on instructions requested by both parties given by the court. Instruction No. 4 was not in conflict with the instruction given at the request of the appellant.

It is contended by the appellant that it was equally probable that Basham's death might have resulted from

either one of two causes, and appellant then quotes from the testimony of Dr. Thatcher. It is true that, if the jury had believed the testimony of appellant's witnesses, it would necessarily have found that Basham's death was not caused by accident, but was due to natural causes.

The evidence was in conflict; appellant's witnesses tending to show that Basham's death was from natural causes, and appellee's evidence tending to show that it was caused by accident. It was the province of the jury to determine which was true. The jury was the sole and exclusive judge of the weight of the evidence and credibility of the witnesses.

We have examined the instructions requested, given and refused. We are of the opinion that the court did not err in this respect, and that the jury was fully and fairly instructed.

We find no error, and the judgment is affirmed.