RIGGS *v.* CLAY COUNTY BURIAL ASSOCIATION.

4-5191                                                        120 S. W. 2d 331.

Opinion delivered October 17, 1938.

See, also, 192 Ark. 994, 96 S. W. 2d 4.

W. J. Schoonover and G. B. Oliver, Jr., for appellant.

O. T. Ward, for appellee.

BAKER, J. The Clay County Burial Association was incorporated in April, 1933, and was domiciled at Rector, in the eastern district of Clay county, with a branch office. at Piggott. Later it opened branch offices or places of business in the western district of Clay county, wherein it was sued. It is charged in the complaint that the burial association wrote burial contracts, or certificates for a consideration, for which it was bound upon the death of a member in good standing to furnish burial services, costing various amounts, according to the kind or form of contract selected by the applicant.

On the 30th day of July, 1935, Mrs. Fannie Henderson, who was one of the agents for the company, appointed to write applications for burial certificates, solicited Bedford Riggs, the appellant in this case, to sign an application for a burial certificate for himself, his wife, and other members of his family, including his son, Wright Riggs, who was then at an age, accepted by the association. It is also stated that Riggs made the application, and paid the initial premium for the certificate on the same day. It is further alleged that Mrs. Henderson was using an automobile at the time she went to the home of appellant Riggs and that the automobile was parked somewhere near the house and that Wright Riggs, a small boy, was resting or lying upon the ground in the shade of a tree near which the automobile had been parked.

After the application had been signed for the burial certificate, Mrs. Henderson returned to and entered the automobile, intending to leave. The automobile had to be cranked by hand in order to start it and her husband performed that service, and started the automobile which had been left in gear at the time it was parked. It rolled forward upon and over the boy, injuring him so serious-

ly that he died a few hours later upon the same day. The burial association was notified of the fact that the application for certificate had been made and the premium paid, but it refused to recognize any liability whatever under the application for a certificate. Suit was filed in due time thereafter in which the plaintiff, Bedford Riggs, the appellant here, sought to recover $100, as being due upon the burial certificate, it being specially alleged that he was in good health and came within the requirements of the burial association to entitle him to a policy, and that there was an arbitrary refusal to issue a certificate, but liability was asserted notwithstanding that fact.

In the second count in the complaint plaintiff sought to recover damages for the death of the child. Answer was duly filed and the cause proceeded to trial, and upon conclusion of appellant's testimony, the court directed the jury to return a verdict in favor of the burial association. It is from this verdict and the consequent judgment rendered thereon that this appeal comes.

There is no substantial conflict in the testimony. We shall attempt a concise statement of the matters presented upon the trial and upon which the parties rely and which have been argued here.

Irby, who was the manager of the burial association at the time of the accident, was called as a witness and testified that Mrs. Henderson was an agent who represented the burial association in soliciting applications for burial contracts. Under her contract she was to receive the first membership fee collected on each policy or contract as compensation for her services. No medical examination was required of applicants, except where the answers to questions indicated something might be wrong. Where the age of the applicant was within the age limits and nothing seemed to be wrong physically, no investigation was made. The agents, however, had no authority to pass on the eligibility of the applicant, but it was the duty of the agent to send the application to the office. He also said that the association was not concerned with the method in which initial payments were made to agents, just so they received payment; that

the fact that Mrs. Henderson accepted chickens in payment of premiums was satisfactory to the association. It is to the agent's interest to get the application to the office so as to be entitled to receive and retain premiums collected. He also identified a blank form, of application then used by the agents, which form, he says, had been approved by the State Banking Department. Attached to the application was a receipt in blank, which was to be filled for the amount paid for the membership fee and to be dated and signed by the solicitor, and upon this receipt there was this statement: "Protection starts upon receipt of certificate in good health and not before." He testified further that no application was ever received for membership as made by Mr. Riggs for himself and family; that Mr. Charles Henderson, husband of Fannie Henderson, was never an agent for the appellee and never had any authority to transact business for the company. The burial association did not undertake to control or have any supervision whatever of the workings of Mrs. Henderson as solicitor for memberships, either as to territory or otherwise; that they had no interest in her automobile, never undertook to tell their solicitors how to drive or by what method they would go from place to place. He had heard that Mrs. Henderson took this application and that she had been paid. Mrs. Henderson had authority to accept the application money or membership fee and receipt for it.

The other proof offered showed the manner in which the boy was injured, which is substantially as pleaded in the complaint and in addition, it shows the extent of the injuries and suffering of the small boy prior to his death. It also shows the controversy arose at once in regard to the claim made by the appellant for the benefits, according to the contract, for the burial of the boy, Riggs making the claim that the burial association had become liable therefor. The appellant himself testified about these facts, stating that he called Mr. Irby and talked with him, and that Mr. Irby advised him that the association was not liable, but he offered to bury the boy for a fee of $50. The appellant was insisting that

the application had been made and the premium paid. In respect to the payment of the premium he testified further as follows: "Mrs. Henderson left the chickens at my house with three or four others, which some of the neighbors came and got because they never got their policies. The chickens got away when they were backing the car out of the bushes after the accident. They never came back after them."

We think all of the foregoing statements may be deemed as true, or undisputed.

The first question for determination is the one arising upon the application for the burial association benefits. It seems to be conceded that the amount of benefits that would have accrued, had the burial certificate been in effect upon the death of the boy, was $100. The original application is not set forth, nor is there any direct evidence to this effect, but for the purposes of this litigation, we treat that matter as uncontradicted. Appellant offers the evidence which we think precludes his recovery. Of course, this testimony came from Mr. Irby who was the manager of the burial association at the time of the death of this child, but the appellant called him as a witness, and in no wise was he contradicted. He identified and offered the form of application used and presumptively the same form that Riggs had signed, with a form of receipt to which was attached the provision above quoted, "Protection starts upon receipt of certificate in good health and not before."

The authority Mrs. Henderson had as an agent writing applications for burial certificates, has already been shown. She could take these applications and receive first premiums and receipt therefor, and then transmit the applications to the office of appellee. There is no contention that she was a general agent or that she could write any kind of policy, or that she had power or pretended to bind the association in any particular, except as appeared from the application and receipt. In other words, there is no question about the fact that her agency was limited. That being true, those who dealt with her must take notice of the limitations upon her agency.

*Mutual Life Ins. Co.* v. *Reynolds*, 81 Ark. 202, 98 S. W. 963.

For a complete or detailed discussion upon this proposition see *Thompson* v. *Equitable Life Assurance Society of U. S.*, 199 N. C. 59, 154 S. E. 21, 85 A. L. R. 739, and accompanying notes.

Notwithstanding the law above cited, that those who deal with agents, whose scope or authority is limited, must take notice of such limitations, express notice was given in this case upon the fee receipt, which she was authorized to sign, that protection was "to start upon receipt of certificate in good health and not before."

There is no reason why the parties should not contract in regard to the time of the effective date of the burial certificate. There is no contention that this provision upon the receipt was unreasonable, contrary to public policy, or that the statement was ineffectual, except that it is argued that liability should attach at the time of the payment of the premium. The effect of this contention is that Mrs. Henderson had the power to bind the company at the time she took the application and received the first premium. This is contrary to the evidence. Some authorities are cited to the effect that when an insurance organization accepts and retains a premium, it is to be deemed to have approved the application and to be bound to the same effect as if contract of insurance had been issued. It is not contended, however, in this case that the premium, the chickens delivered to Mrs. Henderson, was retained, because Mr. Riggs himself says that they escaped or got away when the car stopped at the edge of the bushes after it had run over the boy. We do not think, however, liability depends upon, or is excused on account of or by reason of any disposition that might have been made of the chickens or property that may have been delivered in payment of the initial premium. Liability must be determined by the contract entered into by the parties and not contrary to its provisions. We think the court was correct in declaring in this case that the policy or burial contract had not been issued and was not in force at the time of the death of the child.

Upon the second cause of action alleged, the controversy is not less difficult of determination. There is some difficulty, however, in following appellant's contention that the burial association is liable in damages for the suffering and death of the child killed by the automobile used by Mrs. Henderson, as she traveled over the country seeking prospects or applicants for the burial association. There is argument here whereby the appellant seeks to refute a contention alleged to have been made on the part of the appellee to the effect that Mrs. Henderson was an independent contractor in the operation of the car, which caused the injury to the unfortunate child. We see little reason for asserting the principles of an independent contractor in any respect. We have just above analyzed what appears to be her relation to the appellee burial association. We think it may well be urged that her relation to the burial association was much the same, if not entirely identical with the relation between an insurance agent and an insurance company. We have already discussed the fact that her agency was limited. She had power to write applications, to receipt for premiums received. She must remit or transmit the applications received to her principal, the burial association. This does not imply the use of an automobile, or the operation of any kind of vehicle whatever. As to the manner in which she traveled about the county she was absolutely free. No agency whatever existed. She could go where she pleased within the territory in which the company did business, traveling by whatever means was available to her. Had she personally been operating the automobile at the time of the unfortunate accident, we do not think the conclusion would be different from what we must now hold, that is, that the burial association was not operating the car any more than it would have been operating the railroad train that might have carried her from any point in the territory in which she worked to some other distant point. She might have ridden a neighbor's horse, or gone in a friend's buggy, and neither would have become an agency, machine, or appliance of the appellee.

It is argued that from the time she took the application in her possession until she delivered it to the burial association she was cloaked or clothed with an agency and acted for the company, and that the company must be bound by her conduct during that period. We fail to see how that contention can come within any apparent scope of authority possessed by her as an agent to write applications and collect money.

We think no benefit can arise from a discussion of the controversy of alleged independent contractor, and, therefore, do not attempt to analyze authorities cited in that respect. We think the whole matter here is one of agency, and that appellant has failed to show any error in the action of the court in directing the verdict.

Judgment is affirmed.