Southern National Insurance Company *v.* Williams.

5-591                                   277 S. W. 2d 487

Opinion delivered April 4, 1955.

940

*Catlett & Henderson, Mehaffy, Smith & Williams, William A. Eldredge* and *Calvin R. Ledbetter,* for appellant.

*Tom Gentry, John Shamburger, Claude Carpenter, Jr., Kay Matthews, Wood & Smith* and *Alston Jennings,* for appellee.

GEORGE ROSE SMITH, J. This suit for damages arises from a traffic collision that occurred in Saline County on October 13, 1953. Ruben C. Knabe, the driver of one of the vehicles, was killed, and his two passengers, J. Harold Williams and Norman E. Smith, were seriously injured. Upon these causes of action the jury returned verdicts totaling $145,000 against the appellant, whose agent, John N. Calaway, was driving the other vehicle. The appellant contends that it was entitled to a directed verdict, that certain asserted errors require a new trial at least, and that the verdicts are excessive.

The evidence, from the appellees' point of view, discloses that the collision happened in this manner: Knabe and his two companions were residents of Little Rock and were working for the same employer in Saline County. At about four-thirty on the afternoon in question they finished their day's work and started driving toward Little Rock. On a straight stretch in the highway between Bryant and Bauxite they overtook and began to pass a dump truck. At about the same time Calaway, approaching from the opposite direction at seventy or seventy-five miles an hour, entered the straight stretch and came toward the pickup truck that Knabe was driving. Calaway's wheels skidded on the gravel shoulder on his right-hand side of the highway, and he temporarily lost control of his car. When Calaway completely regained the pavement his car was traveling at an angle, so that he crossed his own lane of traffic and struck the left side of the Knabe truck with his own right front fender. Upon a sharply disputed point there is substantial evidence to the effect that when

the collision occurred Knabe had passed the dump truck and had just returned to his own side of the highway.

In view of Calaway's speed, his loss of control, and the diagonal position of his car at the moment of impact, it cannot be seriously contended that there was no evidence of negligence for the jury. Instead, the appellant argues that it was physically impossible for the collision to have been seen by certain key witnesses who were traveling a short distance ahead of Knabe and whose attention was attracted by Calaway's recklessness. Counsel take certain estimates of speed and distance on the part of these witnesses and undertake to prove thereby that these men must necessarily have already passed the curve at the end of the straight stretch and lost sight of the scene when the collision took place. Such arguments are commonplace in cases of this kind and do not require for their refutation a demonstration that the testimony is accurate in every particular. Obviously the argument assumes that the speeds and distances given are correct and that the rest of the testimony is deliberate perjury, made out of whole cloth. But it is for the jury to determine such matters of credibility; that body is free to accept the detailed eyewitness accounts of the collision as the truth and to regard contradicting estimates of speed and distance as mistakes of judgment on the part of the observers.

Again insisting upon a reversal and dismissal, the appellant contends that John Calaway was not acting in the scope of his employment, and, alternatively, that even if he was so acting the appellant is not liable for his negligence. On the question of scope of employment there was ample evidence to make a case for the jury. Calaway was a salaried employee of the appellant and was living in Benton. On the day of the accident his duties were to collect premiums from industrial policyholders in Bauxite and Bryant. He had worked in Bauxite during the morning, in Bryant during the afternoon, and at the time of the accident was returning to Bauxite to make evening calls upon persons who had been at work earlier in the day. It is argued that Calaway's

trip from Bryant to Bauxite was not in the course of his employment for the reason that he would have reached Bauxite an hour or so before it was time for him to begin the evening round of calls. Even so, the trip was a necessary part of Calaway's employment, undertaken solely in his employer's interest, and the fact that his working time might later have been interrupted for a short interval by his premature arrival at Bauxite did not convert the journey into a personal mission.

To support its contention of nonliability even if Calaway was in the scope of his employment the appellant relies mainly upon *Riggs* v. *Clay County Burial Ass'n*, 196 Ark. 862, 120 S. W. 2d 331. There a soliciting agent for a burial association had used her own car in calling upon a prospective purchaser of burial insurance. As the car was being started for her departure it rolled forward and ran over the plaintiff's son. In approving a directed verdict for the defendant the court said: "We have already discussed the fact that her agency was limited. She had power to write applications, to receipt for premiums received. She must remit or transmit the applications received to her principal, the burial association. This does not imply the use of an automobile, or the operation of any kind of vehicle whatever. As to the manner in which she traveled about the country she was absolutely free. No agency whatever existed. She could go where she pleased within the territory in which the company did business, traveling by whatever means was available to her."

In stressing the fact that the agent in the *Riggs* case was free to travel as she pleased, the court thereby emphasized the association's lack of control over the movements of its solicitor. The importance of the employer's right of control is well understood and need not be discussed at length. The law is succinctly stated in the Restatement of Agency, which defines a servant as an employee whose physical conduct is subject to the master's right of control. Rest., Agency, § 2. As a general rule the master is liable for the tortious conduct of a servant acting in the scope of his employment.

§ 219. But if the agent is not also a servant—that is, if the agent's physical conduct is not subject to the master's control—the principal is not liable merely by reason of the doctrine of *respondeat superior* for the negligent physical conduct of the agent. § 250.

In the *Riggs* case the undisputed evidence showed the solicitor to be an agent but not a servant. Here, however, the evidence presents an issue of fact as to the power of control. Although John Calaway, a boy of eighteen, was driving his own car, there is evidence that the appellant had the right to direct his movements. To begin with, during the week of October 13 young Calaway was making the round of collections ordinarily assigned to his father, L. W. Calaway, who was on vacation. John was furnished with a list of policyholders and was required to collect from each of them during the week. Doubtless he had some discretion in arranging the sequence of his visits, but the minimum orbit that he was required to travel was fixed by the employer. Furthermore, Calaway, unlike the agent in the *Riggs* case, received in addition to his salary an allowance for gas and oil commensurate with the area he was required to cover. A jury of reasonable men might well conclude that an employer who pays the expenses of the agent's travel has some voice in determining how the allowance is to be used. As in many other cases in which the employee was driving his own car, the evidence as a whole made a question for the jury. See, for example, *Monk* v. *Jones*, 190 Ark. 1117, 83 S. W. 2d 526.

Among the errors which are thought to require a retrial is the court's action in permitting certain photographs to be introduced. These pictures represent the drivers' views up and down the highway and unquestionably helped the jury to follow the testimony. The witness who identified the photographs testified that the highway itself was in the same condition when the pictures were taken in May as when the accident occurred in the preceding October; but, in response to a question by appellant's counsel, the witness said that he could not swear that the photographs correctly portrayed the trees

and shrubbery as they had been in October. The witness's uncertainty did not render the exhibits inadmissible. It is well settled that the trial judge is allowed some discretion in deciding whether proffered photographs are sufficiently accurate to be of value to the jury. *Dermott Gro. & Com'n Co.* v. *Meyer,* 193 Ark. 591, 101 S. W. 2d 443; *McGeorge Contracting Co.* v. *Mizell,* 216 Ark. 509, 226 S. W. 2d 566. Here there was no abuse of discretion. Had the condition of the foliage been the ultimate fact that the jury was called upon to determine, **then it might** well be argued that the photographs were inadmissible. But the density of the growth along the highway is involved only indirectly in this case, bearing rather slightly upon the appellant's argument that if certain witnesses had already rounded the curve ahead they could not have looked back and seen the collision. And even as to this collateral issue there is no proof that the pictures were actually misleading. If the foliage was really more dense in October than in May, the appellant was free to prove that fact and to ask the court to reconsider its ruling. The record is devoid of such proof. It cannot be said that the mere possibility of a variance— a possibility that the jurors as reasonable men certainly understood—required the court to reject evidence of undoubted value.

It is also contended that the court erred in permitting excerpts from the depositions of L. W. and John Calaway to be read to the jury as substantive evidence. The case had begun as an action by Williams and Smith against the two Calaways and against Emeline Knabe, as administratrix. In taking the discovery deposition of John Calaway the appellees learned that he had been on a business mission at the time of the accident. Thereafter the appellant was brought into the case, and the present claims were asserted against it. Before trial the plaintiffs took the deposition of L. W. Calaway and also dismissed the complaint as to both Calaways. At the trial L. W. Calaway was called as a witness by the plaintiffs, and John was called by the administratrix. The latter's counsel were permitted to read certain ex-

cerpts from the father's deposition and to question the son about certain statements in his own deposition. In both instances the court refused to limit the use of the depositions to impeachment.

It is now argued that in these circumstances the discovery depositions were admissible against the appellant only for the purpose of impeachment. Ark. Stats. 1947, § 28-348. This may be true, but no prejudice is shown. Counsel for the appellant candidly admit that the testimony of the Calaways as given from the witness stand differs in no material respect from the statements contained in the depositions. Thus all that happened was that the jury was allowed to hear twice certain portions of the Calaways' testimony, the repeated matter amounting to about four typewritten pages in a transcription of testimony that exceeds five hundred pages. It is not uncommon for a witness to be led over the same ground again and again; no one supposes this procedure in itself to be prejudicial. Even if the trial court's ruling in this case was technically incorrect, the error was harmless.

As a matter of fact, in another portion of its argument the appellant seems, at least by implication, to insist upon the repetition of adverse testimony. Williams and Smith, as plaintiffs, used most of the eyewitnesses in the course of proving their case; so the administratrix had very little additional evidence to offer in support of her cross-complaint. It is now contended that the court should not have allowed Mrs. Knabe to adopt the plaintiffs' testimony, especially as she was given the privilege of cross-examination. If this argument were sound the administratrix's only available course could have been to recall all the plaintiffs' witnesses and have them repeat to the jury their versions of the accident. Such a duplication of testimony was held to be unnecessary in *Derrick* v. *Rock,* 218 Ark. 339, 236 S. W. 2d 726.

The most difficult questions are presented by the contention that the verdicts are excessive. For the

wrongful death of Ruben Knabe the jury awarded the administratrix $5,000 for the benefit of the estate (which is not seriously attacked) and $95,000 for the benefit of the decedent's widow and three small children.

As a preliminary matter it is contended that the appellant is not entitled to question the amount of the verdict, for the reason that the liberality of the award was not challenged in the trial court. This argument would formerly have been meritorious. By the Civil Code excessiveness of the damages was a ground for a new trial, Ark. Stats., § 27-1901, and the error was waived if not assigned in the motion for a new trial. *St. L., I. M. & S. R'y* v. *Branch,* 45 Ark. 524. But Act 555 of 1953 provides that no motion for a new trial and no assignment of errors shall be necessary. Ark. Stats., § 27-2127.5. Thus the old rule has apparently been abrogated.

It is argued, however that another provision of Act 555, after abolishing formal exceptions, declares that ''for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objections to the action of the court and his grounds therefor. . . .'' The appellee construes this provision to mean that no error can be urged in this court without having first been brought to the trial court's attention. Some federal decisions are cited, but they are of little value for the reason that the federal rules of civil procedure, unlike Act 555, retained the use of a motion for a new trial. Rule 59.

Although conflicting inferences may be drawn from the two sections of Act 555, it is possible to harmonize the two. The requirement that a contemporaneous objection be made to the court's order or ruling evidently contemplates that the trial judge should be given an opportunity to avoid an error of his own making. But an excessive verdict is in no way attributable to the trial judge, for he plays no part in the jury's deliberations. The judge's power can be invoked only after

the verdict has been announced; he may then set aside the award. *Interurban Ry. Co.* v. *Trainer,* 150 Ark. 19, 233 S. W. 816. But, with rare exceptions, the judge's intervention involves the granting of a new trial. Hence the appellee's construction of the statute would in substance reinstate the need for a motion for a new trial, in spite of the clear statutory language to the contrary. We conclude that under the new statute the amount of the verdict may be questioned without the appellant's having filed a motion for a new trial. In so holding we do not intimate that the former practice is to be discouraged; the opinion of the trial judge as to the propriety of the verdict would be of great value and, although not essential, would be welcomed by us.

On the merits the record shows that at the time of his death Ruben Knabe was thirty-five, had a life expectancy of 33.44 years, and was earning about $8,000 a year, of which "well over half" was contributed to the support of his family. Since his conscious pain was compensated by the $5,000 verdict, the question is whether $95,000 is too liberal an allowance for the pecuniary loss sustained by his family. Precedents are of scant value in a case like this, but it may be observed that this verdict exceeds any ever upheld by this court. In *Mo. Pac. R. Co.* v. *Bushey,* 180 Ark. 19, 20 S. W. 2d 614, the court approved a verdict of $48,500 for the death of a father who was contributing $3,260 annually to his family, but the award included an undetermined amount for intense suffering. And in *Southwestern Bell Tel. Co.* v. *Balesh,* 189 Ark. 1085, 76 S. W. 2d 291, we sustained a $50,000 award for the death of one who was contributing $7,000 a year to his wife and children. At the other extreme, comparatively small verdicts have not infrequently been reduced; many of the cases were reviewed in *Mo. Pac. Transp. Co.* v. *Simon,* 199 Ark. 289, 135 S. W. 2d 336. After considering this case in the light of its predecessors, and taking into account the increased cost of living, we are of the opinion that the sum of $75,000 is the most liberal allowance that can be justified by the record.

In the case of J. Harold Williams the verdict of $20,000 is manifestly excessive. Williams was earning about $8,000 a year as a journeyman pipe fitter; his life expectancy was 37.74 years. Apart from minor injuries which healed satisfactorily his only complaint results from the crushing of his left great toe. Despite two operations the left foot is permanently enlarged and will require a specially made shoe in the future. Williams' physician estimates that Williams has permanently lost twenty-five per cent of the use of his left foot. We think an award of $12,500 is the maximum sum commensurate with this appellee's suffering, medical expense, and future pecuniary loss.

In Norman E. Smith's case it cannot be said that the verdict of $25,000 is excessive. Smith suffered a concussion of the brain, a broken collarbone, and a broken back, in addition to the bruises to be expected. The seriously fractured collarbone limits the use of his right arm, while the fractured vertebra requires a brace and has impaired Smith's ability to bend his back. According to the medical testimony this man is permanently, partially disabled and will suffer recurrent pain for the rest of his life. At the time of the accident Smith was a pipefitter, was earning about $9,000 annually, and had an expectancy of 17.78 years. The verdict is not demonstrably disproportionate to the pecuniary loss.

The judgment in favor of Smith is affirmed. The other two judgments are respectively affirmed upon condition that remittiturs be entered within seventeen calendar days; otherwise the judgments will be reversed and the causes remanded for a new trial.

GRIFFIN SMITH, C. J., not participating. McFADDIN, J., would affirm all three judgments, without reduction.